Billy Ray BERRY, et ux., Appellants,

v.

## TEXAS FARM BUREAU MUTUAL INSURANCE COMPANY, et al.

### No. 10–88–146–CV.

Court of Appeals of Texas,
Waco.

Oct. 31, 1989.

Rehearing Denied Dec. 21, 1989.

Michael Thomas, Martin & Thomas, Mexia, for appellants.

John W. Fulbright, Fulbright, Winniford, Bice & Marable, Waco, for appellees.

OPINION

THOMAS, Chief Justice.

This is an appeal from summary judgments in favor of two insurance companies in a suit for uninsured motorist benefits under four separate policies. Three of the policies were issued by Texas Farm Bureau Mutual Insurance Company and one by National County Mutual Insurance Company. Billy and Betty Berry, who were insureds in each policy, sued Texas Farm Bureau and National County for uninsured motorist benefits after they were injured by an uninsured motorist while occupying a 1981 Chevrolet Monte Carlo. The vehicle was jointly owned by the Berrys, but only insured under National County's policy.

Texas Farm Bureau was granted a summary judgment on the ground that its policies excluded any recovery for bodily injury sustained by an insured while occupying an owned but unscheduled vehicle. National County's summary judgment was based on the ground that the Chevrolet Monte Carlo was not insured for uninsured motorist coverage under its policy because Betty Berry, the named insured, had rejected such coverage on the original policy and was suing on a renewal policy.

Two questions are presented. First, was the exclusion relied on by Texas Farm·Bureau an invalid restriction of uninsured motorist coverage mandated by article 5.06–1 of the Insurance Code? *See* TEX.INS. CODE ANN. art. 5.06–1(1) (Vernon 1981). Second, was National County's policy a "renewal policy" within the meaning of article 5.06–1(1)? Both questions being answered in favor of the insurers, the summary judgments will be affirmed.

### VALIDITY OF EXCLUSION

■ Texas Farm Bureau's three policies contained an exclusion which barred recovery of uninsured motorist benefits by an insured who sustained bodily injury while occupying an owned but uninsured vehicle. The Berrys contend the exclusion cannot be enforced because it restricts the uninsured motorist coverage mandated by article

5.06–1. They rely on the *dicta* [1] in *Westchester Fire Insurance Company v. Tucker*, 512 S.W.2d 679, 685, 686 (Tex.1974) (on rehearing), and the decision in *Stephens v. State Farm Mutual Automobile Ins. Co.*, 508 F.2d 1363, 1368 (5th Cir.1975), in which the Fifth Circuit Court of Appeals held that "exclusionary clauses are invalid restrictions on coverage when they excuse the policy for which a premium has been paid from providing the minimum coverage required by the Texas Uninsured Motorist Statute."

Citing the *dicta* in *Tucker* as the rationale for its holding, the Texarkana Court of Civil Appeals also held that the exclusion was an unauthorized limitation of the personal-injury-protection coverage required by article 5.06–3 of the Insurance Code. *Western Alliance Ins. Co. v. Dennis*, 529 S.W.2d 838, 840 (Tex.Civ.App.—Texarkana 1975). However, in *Holyfield v. Members Mutual Insurance Company*, 572 S.W.2d 672, 673 (Tex.1978), the Texas Supreme Court expressed its disapproval of the decision in *Western Alliance* "and its construction of the Texas Insurance Code and its interpretation of *Westchester Fire Insurance Co. v. Tucker*."

Since *Holyfield*, Texas appellate courts have consistently upheld the exclusion in suits involving uninsured motorist coverage. *See Beaupre v. Standard Fire Ins. Co.*, 736 S.W.2d 237, 239 (Tex.App.—Corpus Christi 1987, writ denied); *Broach v. Members Insurance Company*, 647 S.W.2d 374 (Tex.App.—Corpus Christi 1983, no writ); *Equitable General Ins. Co. v. Williams*, 620 S.W.2d 608, 611 (Tex.Civ.App.—Dallas 1981, writ ref'd n.r.e.). These decisions, which this court will follow, have resolved the issue against the Berrys. Thus, Texas Farm Bureau was entitled to a summary judgment based on the exclusion. *See id.*

## NATIONAL COUNTY'S POLICY

■ Billy and Betty Berry were injured on November 26, 1986, when the 1981 Chevrolet Monte Carlo they were occupying was struck by an uninsured motorist. They were then insured under a National County policy in which the Monte Carlo was the only insured vehicle. According to the declarations page of the policy, the Monte Carlo was not insured for uninsured or underinsured motorist coverage.

Article 5.06–1(1) provides in part:

> The [uninsured and underinsured motorist] coverages required under this Article shall not be applicable where any insured named in the policy shall reject the coverage in writing; provided that unless the named insured thereafter requests such coverage in writing, such coverage need not be provided in or supplemental to a *renewal policy* where the named insured has rejected the coverage in connection with a policy previously issued to him by the same insurer or by an affiliated insurer.

TEX.INS.CODE ANN. art. 5.06–1(1) (Vernon 1981) (emphasis added). When the legislature enacted this portion of the statute in 1967, it did so with the knowledge of prior court decisions relating to the renewal or extension of insurance contracts. *See State v. Anderson*, 119 Tex. 110, 26 S.W.2d 174, 178 (Tex.Comm'n App.1930, opinion adopted).

Since 1950, and at the time the legislature enacted article 5.06–1, the law relating to the renewal of insurance contracts was as follows:

> It is the general rule that a renewal of a policy constitutes a separate and distinct contract for the period of time covered by the renewal, *except where the provisions of the extension certificate show that the purpose and intention of the parties was not to make a new contract but was to continue the original contract in force....* And "such limitation must be found in clear and unam-

---

1. The troublesome *dicta*: "As stated in our original opinion, we have concluded that the policy exclusion of injuries sustained by an insured while occupying an owned but unscheduled vehicle is ineffectual to the extent that it deprives a person of coverage required by Article 5.06–1 of the Insurance Code." *Westchester Fire Insurance Company v. Tucker*, 512 S.W.2d 679, 686 (Tex.1974) (on rehearing).

biguous terms within the four corners of the certificate."

*Great American Indemnity Co. v. State,* 229 S.W.2d 850, 853 (Tex.Civ.App.—Austin 1950, writ ref'd) (emphasis added). This rule comports with the accepted definitions of "renew" which, among others, include: "to begin again," "to recommence," "to resume," "to reestablish," "to recreate," and "to replace." BLACK'S LAW DICTIONARY 1165 (5th ed. 1979). These definitions envision the creation of something new with a nexus to the old. Thus, unless the parties express in "clear and unambiguous terms" in the renewal document that they do *not* intend to make a new contract, the "renewal" constitutes a "beginning again," a "recommencing," a "resuming," a "reestablishing," a "recreating," or a "replacing" of the old, pre-existing contract with the new contract between the parties for the term stated. *See id.*

The question is whether the policy in effect on the date of the accident was a "renewal policy," as that term is used in article 5.06–1(1). This involves the determination of legislative intent. One must presume the legislature knew when it selected the term "renewal policy" that a new, separate and distinct contract is created between insurer and insured unless they clearly and unambiguously reflect in the renewal document that they do not intend such a result. *See Great American Indemnity Co.,* 229 S.W.2d at 853.

Did the legislature intend to include these new, separate and distinct contracts within the term "renewal policy" or did it intend to include within the term only those policies which extend the initial or original policy between the parties? Stated differently, was the legislature's intent to require a written rejection of uninsured motorist coverage on every new, separate and distinct contract between the parties, although each successive policy is connected in an unbroken chain of coverage back to the original or initial policy on which uninsured motorist coverage was rejected?

Betty Berry was the named insured in an unbroken chain of automobile liability coverage under National County policies dating back to November 19, 1984. She was originally issued policy ATJ107469, effective November 19, 1984, to November 19, 1985, after rejecting in writing uninsured motorist coverage in connection with its issuance.

On October 3, 1985, National County furnished Betty Berry an "Automobile Insurance Renewal Notice," informing her that policy ATJ107469 would expire on November 19. She signed this form on November 19 in three places: immediately below a printed statement requesting the renewal of her coverage; in a portion of the form rejecting uninsured motorist coverage; and in a portion of the form rejecting underinsured motorist coverage. Based on this request, National County issued her policy ATJ127286 with a term from November 19, 1985, to November 19, 1986.

National County also furnished Betty Berry an "Automobile Insurance Renewal Notice," dated November 10, 1986, informing her that policy ATJ127286 would expire on November 19. Although the record does not reflect that she ever signed this form, National County issued her policy KMA020511, covering November 19, 1986, to November 19, 1987. The Berrys accepted the policy and paid the premium to insure the 1981 Chevrolet Monte Carlo for the policy term. This was the policy in effect when the accident occurred.

The Berrys contend that a material fact issue existed on whether policy KMA020511, which was in effect when the accident occurred, was a renewal of the previous policy ATJ127286, and whether policy ATJ127286 was a renewal of the original policy, ATJ107469. They recognize that there was no lapse in coverage between the issuance of the initial policy and the policy in effect on the date of the accident. However, the Berrys claim that each policy issued after the initial policy was an original, not a renewal policy, because each had a new policy number and was complete within itself. Furthermore, they point out that the declaration page of the policy in effect on the date of the accident states that it is the "ORIGINAL POLICY DECLARATIONS."

Policy KMA020511, the contract sued on, does not reflect in "clear and unambiguous terms" that National County and Betty Berry did *not* intend to create a new contract for the period November 19, 1986, to November 19, 1987. Thus, a new contract was created between them for the term stated. *See Great American Indemnity Co.*, 229 S.W.2d at 853. That does not end the inquiry.

The pivotal question is whether the legislature intended their new contract to be included in the term "renewal policy" as used in article 5.06–1. If so, then National County was not obligated to provide uninsured motorist coverage under policy KMA020511 because Betty Berry had rejected such coverage "in connection with a policy previously issued to [her] by the same insurer." *See* TEX.INS.CODE ANN. art. 5.06–1(1) (Vernon 1981). Considering the rule in *Great American Indemnity Co.*, which existed when the legislature enacted article 5.06–1 in 1967, and the accepted definitions of "renew," the legislature intended the term "renewal policy" to include new contracts that "begin again," "recommence," "resume," "reestablish," "recreate," and "replace" a preceding policy without a lapse of coverage.

Accordingly, National County was not obligated to provide uninsured motorist coverage in policy KMA020511, the policy sued on, because Betty Berry had rejected such coverage in writing in connection with the issuance of the initial policy, ATJ107469. National County was entitled to a judgment as a matter of law because the 1981 Chevrolet Monte Carlo was not insured for uninsured motorist coverage.

Both points of error are overruled. The summary judgments are affirmed.