

# ATTORNEY GENERAL OF TEXAS

### GREG ABBOTT

September 11, 2007

Mr. Glenn Lewis
Chair, Board of Regents
Texas Southern University
3100 Cleburne Avenue
Houston, Texas 77004

Opinion No. GA-0567

Re: Whether a member of the Legislature may provide insurance services to a state university (RQ-0576-GA)

Dear Mr. Lewis:

Texas Southern University ("TSU") has asked whether a member of the Texas Legislature (the "Legislator") may provide insurance services to a state university.[1] TSU's Office of General Counsel informed us that the Legislator entered into insurance contracts with TSU prior to the person's election to the Texas House of Representatives. *See* Request Letter, *supra* note 1, at 1. The Office of General Counsel also informed us that the contracts were awarded through "arms-length competitive bidding." *Id.* While the Office of General Counsel informed us about the types of insurance coverage purchased with the contracts, it did not provide any details about the contracts such as the duration of the contracts or terms governing renewal, modification, or amendment of the contracts. *See id.* Nor did it provide details regarding the Legislator's interest in the contracts. *See id.* Without all pertinent facts regarding the contracts, we can only opine on the question in general terms.

TSU is concerned specifically about article III, section 18, Texas Constitution, and subchapter C, chapter 572, Government Code.[2] *See* Request Letter, *supra* note 1, at 1–2. In pertinent part, article III, section 18 provides that a member of the Legislature shall not "be interested, either directly or indirectly, in any contract with the State, or any county thereof, authorized by any law passed during the term for which [the member] was elected." TEX. CONST. art. III, § 18. Section 572.051(3), Government Code, prohibits a state officer from accepting "employment or compensation that could reasonably be expected to impair the officer's . . . independence of judgment in the performance of the officer's . . . official duties." TEX. GOV'T CODE ANN. § 572.051(3) (Vernon 2004). We consider each provision in turn.

---

[1]*See* Letter from Ms. Tammye Curtis-Jones, on behalf of the Office of General Counsel, Texas Southern University, to Opinion Committee, Office of the Attorney General, at 1 (Mar. 5, 2007) (on file with the Opinion Committee, *also available at* http://www.oag.state.tx.us) [hereinafter Request Letter].

[2]You do not inquire, and thus we do not opine, about Texas Penal Code, chapter 36's applicability. *See generally* TEX. PEN. CODE ANN. ch. 36 (Vernon 2003 & Supp. 2006).

## I.      Texas Constitution, article III, section 18

Article III, section 18 is intended to prevent a member of the Legislature from personally profiting from holding office. *See Damon v. Cornett*, 781 S.W.2d 597, 600 (Tex. 1989) (stating the clause is intended to "prevent improper financial gain by members of the legislature"); *see also Washington v. Walker County*, 708 S.W.2d 493, 496 (Tex. App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.) ("Art. III, sec. 18 was intended to prevent personal gain and profit by members of the legislature as a result of the office they hold."). By its plain language, article III, section 18 involves: (1) a member of the Legislature; (2) who has a direct or indirect interest in any contract; (3) with the State or county thereof; and (4) which contract is authorized by any law passed during the term for which the member was elected. *See* TEX. CONST. art. III, § 18; *see also Republican Party of Tex. v. Dietz*, 940 S.W.2d 86, 89 (Tex. 1997) (stating that when interpreting the state constitution, we must look at its literal text and give effect to its plain language). Thus, whether article III, section 18 is a bar to existing or future contracts requires a determination about the existence of each element.

A threshold matter here, and the first element of the constitutional prohibition, is that the prohibition applies to only a member of the Legislature. *See* TEX. CONST. art. III, § 18. The Texas Supreme Court has defined the phrase "member of the legislature" in the context of article III, section 18 to mean "a person who is currently serving in the legislature." *Damon*, 781 S.W.2d at 599. In formulating the definition, the court distinguished a current member from a former member and held that article III, section 18 did not bar contracts of former members. *See id.* The court rejected an "overbroad judicial interpretation" of article III, section 18 and reasoned that the prohibition was not meant to "place a lifetime 'mark of Cain' on every citizen who is willing to benefit our state by serving in the legislature." *Id.* at 600. Analogously, the prohibition should not be given an overbroad interpretation here such that its "mark of Cain" is placed on a person who has yet to be elected, thus serving as a deterrent to future legislative service: A member—a person currently serving—is distinguishable from a person not yet elected to the Legislature. We thus believe that article III, section 18 does not bar any contract with a person before the person becomes a member of the Legislature. Accordingly, article III, section 18 would not prohibit any original contract between the Legislator and TSU that was agreed to prior to the Legislator's election and qualification. Upon becoming a member of the Legislature, however, the Legislator would be constrained by article III, section 18 where the other elements were present.

The second article III, section 18 element requires that a legislator have a direct or indirect interest in the contract. *See* TEX. CONST. art. III, § 18. The request letter provides no information on the nature of the Legislator's interest in the sale of the insurance contracts. This office has analogized the interest proscribed by article III, section 18 to an interest under article V, section 11 that disqualifies a judge in certain cases. *See* Tex. Att'y Gen. Op. No. M-625 (1970) at 5–6. An interest under article V, section 11 is not the type of interest shared with the public generally; it must be one in which the judge "by the judgment in the case, gain[s] or lose[s] something." *Id.* at 6. (quoting *Moody v. City of Univ. Park*, 278 S.W.2d 912, 919 (Tex. Civ. App.—Dallas 1955, writ ref'd n.r.e.)). Similarly, the interest under article III, section 18 must be more than the general interest shared by the public; it must be one that involves gain or loss specific to the member of the

Legislature. The business of providing insurance or receiving premiums likely constitutes a direct or indirect interest. Nonetheless, the question of "[w]hether a legislator's interest in a business is significant enough to prevent that business from contracting with the State is a question of fact." Tex. Att'y Gen. LO-89-72, at 1; *see also Washington*, 708 S.W.2d at 496 (examining factors involved in legislator's interest in fees paid while serving as appointed attorney for indigent defendant and distinguishing from interest in contract contemplated by article III, section 18); Tex. Att'y Gen. Op. No. GA-0003 (2002) at 1 (stating that the opinion process does not determine facts).

The third element of the article III, section 18 prohibition is that the contract be with the state or a county thereof. *See* TEX. CONST. art. III, § 18. As a state university is not a county, the concern relevant to TSU's query is whether a state university is the "state" within article III, section 18's prohibition. While article III, section 18 does not define the term "state" and thus provides no guidance on its meaning or scope, a state university generally, and TSU specifically, is included within the scope of article III, section 18. *See* TEX. EDUC. CODE ANN. § 106.02 (Vernon 2002) (designating TSU as a "statewide general purpose institution of higher education"); *see also Addison v. Addison*, 530 S.W.2d 920, 921 (Tex. Civ. App.—Houston [1st Dist.] 1975, no writ) (recognizing TSU as branch of the University of Texas System of Higher Education).

The fourth element requires that the prohibited contract be "authorized by any law passed during the term for which [the member of the Legislature] was elected." TEX. CONST. art. III, § 18. In addition to a statute expressly authorizing the contract, the phrase "any law passed during the term" includes any "appropriation providing funds for the contract." Tex. Att'y Gen. Op. No. JM-782 (1987) at 1; *see also* Tex. Att'y Gen. Op. Nos. JM-162 (1984), H-696 (1975), M-625 (1970), O-6582 (1945), O-1519 (1939). Thus, any new insurance contracts entered into with the Legislator after his election and qualification would be subject to article III, section 18 to the extent the contracts were authorized by any law, including appropriations enactment, enacted during the Legislator's term. *See, e.g.*, TEX. EDUC. CODE ANN. § 51.966 (Vernon 2006) (authorizing institutions of higher education to purchase insurance); *id.* § 62.021 (providing for allocation of constitutionally appropriated funds among certain institutions of higher education); *see also* Tex. H.B.1, 80th Leg., R.S. (2007) (including appropriation to TSU) [*currently available at* http://www.lbb.state.tx.us].

After consideration of the elements of the prohibition in article III, section 18, we believe the answer to TSU's question likely turns on this last element; specifically, whether *new* contracts, or new appropriations, were authorized by any law enacted during the Legislator's term. Absent factual information on the nature and duration of the particular insurance contracts, however, we cannot provide a definitive answer. Insurance contracts are generally construed under the rules of contract construction. *See Safeway Managing Gen. Agency for State & County Mut. Fire Ins. Co. v. Cooper*, 952 S.W.2d 861, 865 (Tex. App.—Amarillo 1997, no writ). Specifically, insurance contract renewals, without written indication to the contrary, are treated as new contracts. *See Berry v. Tex. Farm Bureau Mut. Ins. Co.*, 782 S.W.2d 246, 249 (Tex. App.—Waco 1989, writ denied). Similarly, modifications to insurance contracts ordinarily result in a new contract. *See Greenbelt Elec. Coop., Inc. v. Johnson*, 608 S.W.2d 320, 325 (Tex. Civ. App.—Amarillo 1980, no writ) (recognizing Texas

law considers a contract modified by mutual consent as a new contract). Thus, to the extent the original insurance contracts were renewed or modified after the Legislator was elected, and were authorized by any law enacted, including appropriation enactments, during the term for which the member of the Legislature was elected, the contracts would likely be barred by article III, section 18.

## II.      Texas Government Code, chapter 572

Chapter 572, Government Code, contains provisions relating to personal financial disclosure, standards of conduct, and conflicts of interest. *See* TEX. GOV'T CODE ANN. ch. 572 (Vernon 2004 & Supp. 2006). The chapter's purpose is to prohibit a state officer or employee from having

> a direct or indirect interest, including financial and other interests, or engage in a business transaction or professional activity, or incur any obligation of any nature that is in substantial conflict with the proper discharge of the officer's or employee's duties in the public interest.

*Id.* § 572.001(a) (Vernon 2004). Section 572.051[3] prohibits a state officer from accepting "employment or compensation that could reasonably be expected to impair the officer's . . . independence of judgment in the performance of the officer's . . . official duties." *Id.* § 572.051(3). Questions about the propriety of a legislator's employment depends on the particular facts. *See* Tex. Att'y Gen. Op. No. GA-0087 (2003) at 1; Tex. Att'y Gen. LO-96-043, at 4 (recognizing that violation of provisions of section 572.051 is a fact question). Moreover, "[c]ompliance with the provisions in section 572.051 is a matter of personal ethics." Op. Tex. Ethics Comm'n No. 228 (1994) at 2 n.2 (and authority cited therein); *see also* Op. Tex. Ethics Comm'n Nos. 408 (1998) at 1, 192 (1994) at 1 (considering actions under Penal Code and section 572.051 and stating that "a state officer or employee must decide for himself whether his actions violate state policy and standards of conduct"), 156 (1993) at 1 (compliance with standards of conduct set out in section 572.051 is a matter of personal ethics), 41 (1992) at 1. Accordingly, questions involving the propriety under chapter 572 of a legislator's business or employment activities are generally not appropriate for the attorney general opinion process.

---

[3]Section 572.056 limits a state officer's contracting authority. *See* TEX. GOV'T CODE ANN. § 572.056(a) (Vernon 2004). We do not address here questions concerning the applicability of this section to the insurance contracts because you tell us that the contracts were competitively bid. *See* Request Letter, *supra* note 1, at 1. Under section 572.056, contracts that are competitively bid are expressly excluded from the provision. *See* TEX. GOV'T CODE ANN. § 572.056(b)(1) (Vernon 2004).

## S U M M A R Y

The constitutional prohibition in article III, section 18, does not bar contracts with individuals not yet elected to the Texas Legislature. Once elected to the Legislature, a legislator may not provide insurance services to a state university unless authorized under the Texas Constitution and statutes.

Questions involving the propriety of a legislator's particular activities under chapter 572, Government Code, involve fact determinations and are determined in the first instance by the individual legislator and, thus, are generally inappropriate for the opinion process.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

KENT C. SULLIVAN
First Assistant Attorney General

NANCY S. FULLER
Chair, Opinion Committee

Charlotte M. Harper
Assistant Attorney General, Opinion Committee