

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-10-00312-CV

CAROLINA IBARRA                                                          APPELLANT

V.

PROGRESSIVE COUNTY MUTUAL                                  APPELLEE
INSURANCE COMPANY

----------

## FROM COUNTY COURT AT LAW NO. 2 OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

This appeal concerns an insurance coverage dispute. Appellant Carolina Ibarra appeals the trial court's decision to grant the motion for summary judgment filed by appellee Progressive County Mutual Insurance Company. In two issues, appellant argues that the trial court wrongly granted judgment against a claim that appellee did not challenge in its motion and that appellant's

---

[1]*See* Tex. R. App. P. 47.4.

uninsured/underinsured motorist insurance policy (UM/UIM) with appellee improperly restricts coverage and therefore violates Texas law. We affirm in part and reverse and remand in part.

**Background Facts**

It is undisputed that on an early morning in the summer of 2009, Sarah Birthisel lost control of her car, which jumped a curb at appellant's home, struck appellant's 1984 Cadillac (which was in her driveway), and crashed through the wall of the home, stopping inside the kitchen. The Cadillac, valued by appellant at $2,000, was totaled. The damage to appellant's home requires reconstruction that will cost approximately $50,000.[2]

A Tarrant County court convicted Birthisel of driving while intoxicated based on her guilty plea. Birthisel had automobile insurance through Liberty Mutual, which paid appellant $25,000, the policy's limit, to account for part of the damage caused to appellant's car and property. Appellant had her own automobile insurance coverage with appellee, for which appellee charged semiannual premiums. The policy included UM/UIM coverage of up to $25,055 per accident for property damage for appellant's three cars. The UM/UIM portion of the policy stated in part,

---

[2]A contractor submitted an affidavit in which he opined that the accident pushed the framing loose from the slab, requiring the home to be completely rebuilt.

**INSURING AGREEMENT – UNINSURED/UNDERINSURED MOTORIST PROPERTY DAMAGE COVERAGE**

If **you** pay the premium for this coverage, **we** will pay for damages that an **insured person** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle**[3] due to **property damage** to a **covered auto**:

1. caused by an accident; and
2. arising out of the ownership, maintenance, or use of an **uninsured motor vehicle**.

The policy defined "property damage" as physical damage to, or destruction or loss of use of (1) a covered auto, (2) any property owned by an insured person and contained in the covered auto at the time of the accident, and (3) any property owned by appellant or a relative while contained in an auto being operated by appellant or her relative. Another part of the UM/UIM coverage stated that property damage to a covered auto would be limited to the cash value of the covered auto or the amount necessary to replace or repair it.

Appellant submitted a claim under her UM/UIM coverage for recovery of the balance of the damage to her house, but appellee denied the claim. Appellant then sued appellee for allegedly breaching the policy, seeking damages and attorney's fees.[4]

---

[3]The policy's definition of an uninsured motor vehicle included an underinsured motor vehicle.

[4]Appellant stated in her pleading that appellee's "failure to pay any amount under the uninsured/underinsured portion of the policy . . . constitutes a breach of its contract of insurance."

3

Appellee answered through a general denial and then filed a motion for summary judgment that was based on appellee's argument that the benefits claimed by appellant for the damage to her house are not covered under the plain language of the UM/UIM portion of appellant's policy. Appellee asserted that the damage was not covered because the home was not a covered auto, was not contained within a covered auto, and was not property located in an auto operated by appellant or her relative. Appellant responded to appellee's motion by contending that the provisions of her insurance policy relating to UM/UIM coverage are invalid because they violate two sections of the insurance code.

The trial court granted appellee's summary judgment motion, ordering that appellant take nothing by her suit. Appellant brought this appeal.

### The Scope of Appellant's UM/UIM Coverage

In her second issue, appellant contends that the trial court erred by granting summary judgment for appellee because her UM/UIM policy improperly limits the scope of property damage coverage. In a summary judgment case, the issue on appeal is whether the movant met the summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We review a summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). A defendant who conclusively negates at least one essential element of a cause of action is entitled to summary judgment on

that claim. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010), *cert. denied*, 131 S. Ct. 1017 (2011).

Insurance is an agreement by which one party assumes a risk faced by another in return for a premium payment. *See* Black's Law Dictionary 870 (9th ed. 2009). Insurance policies are contracts. *Rice v. Metro. Life Ins. Co.*, 324 S.W.3d 660, 666 (Tex. App.—Fort Worth 2010, no pet.); *see Markel Ins. Co. v. Muzyka*, 293 S.W.3d 380, 385–86 (Tex. App.—Fort Worth 2009, no pet.) (describing various principles of contract interpretation that apply to insurance policies). "The elements of a breach of contract claim are (1) the existence of a valid contract, (2) performance or tendered performance by the plaintiff, (3) breach of the contract by the defendant, and (4) resulting damages to the plaintiff." *Rice*, 324 S.W.3d at 666 (quoting *Fieldtech Avionics & Instruments, Inc. v. Component Control.Com, Inc.*, 262 S.W.3d 813, 825 (Tex. App.—Fort Worth 2008, no pet.)).

Appellant concedes that damage to her house is not covered under the express terms of her policy, but she contends that the policy violates the insurance code and should be reformed. Policy provisions, even if approved by the department of insurance, are invalid if they are inconsistent with express statutory requirements or purposes.[5] *Mid-Century Ins. Co. of Tex. v. Kidd*, 997

---

[5]Appellee asserts that its UM/UIM policy was "accepted and adopted by the Texas Department of Insurance on November 15, 2006." Appellant does not contest this assertion. *See* Tex. R. App. P. 38.1(g) ("In a civil case, the court will accept as true the facts stated unless another party contradicts them.").

5

S.W.2d 265, 271–72 (Tex. 1999); *Westchester Fire Ins. Co. v. Admiral Ins. Co.*, 152 S.W.3d 172, 184 (Tex. App.—Fort Worth 2004, pet. denied) (en banc op. on reh'g). In construing statutes, we "ascertain and give effect to the legislature's intent as expressed by the language of the statute. We construe a statute according to the plain meaning of its words unless a contrary intention is apparent from the context, or unless such a construction leads to absurd results." *Wood v. Tex. Dep't of Pub. Safety*, 331 S.W.3d 78, 80 (Tex. App.—Fort Worth 2010, no pet.) (citation omitted).

UM/UIM coverage "protects *insureds* who are legally entitled to recover from owners or operators of uninsured or underinsured motor vehicles damages for bodily injury, sickness, disease, or death, or property damage resulting from the ownership, maintenance, or use of any motor vehicle." Tex. Ins. Code Ann. § 1952.101(a) (West 2009) (emphasis added). In Texas, insurers may not issue an automobile insurance policy unless the insurer provides UM/UIM coverage or the insured rejects such coverage in writing. *Id.* § 1952.101(b)–(c); *see also id.* § 2301.053(b) (West 2009) ("Each form for a personal automobile insurance policy must provide the coverages mandated under Subchapters C and D, Chapter 1952, unless the coverages are rejected by the named insured in the manner provided by those subchapters.").[6] The purpose of the UM/UIM statute,

---

[6]The insurance code defines personal automobile insurance as coverage for the ownership, maintenance, or use of a "private passenger, utility, or miscellaneous type motor vehicle, including a motor home, trailer, or recreational vehicle." Tex. Ins. Code Ann. § 2301.051(2) (West 2009). The code contains a

6

as stated by the legislature and the supreme court, is to protect *motorists* from financial loss caused by other negligent, financially irresponsible motorists. *Stracener v. United Servs. Auto. Ass'n*, 777 S.W.2d 378, 382 (Tex. 1989); *see Rosales v. State Farm Mut. Auto. Ins. Co.*, 835 S.W.2d 804, 805 (Tex. App.— Austin 1992, writ denied); *see also* Act of May 3, 1967, 60th Leg., R.S., ch. 202, § 3, 1967 Tex. Gen. Laws 449 ("[T]he people of Texas are constantly exposed to financial loss caused by negligent financially irresponsible motorists . . . [and] it is the . . . purpose of this Act to provide a means of *protecting the conscientious and thoughtful motorist* . . . .") (emphasis added).[7]  This purpose is consistent with the facts that appellant's UM/UIM coverage was included as part of her general *automobile* insurance policy and that she paid separate UM/UIM premiums for each of her covered cars.[8]

---

separate definition for "residential property insurance," which covers losses to "residential real property at a fixed location."  *Id.* § 2301.051(3).

[7]The UM/UIM statute is to be construed "liberally to give full effect to the *public policy which led to its enactment*."  *Stracener*, 777 S.W.2d at 382 (emphasis added).

[8]Appellant paid a six-month premium of $1,118.50 for her automobile insurance.  That amount covered three cars, including the damaged 1984 Cadillac.  For UM/UIM property damage coverage, appellant paid semiannual premiums of $13 for a 1999 Chevrolet, $16 for the Cadillac, and $34 for a 2007 Chevrolet.  Thus, it seems clear that appellant's UM/UIM coverage was tied to some distinguishing characteristic of the vehicles or the value of them.  If we were to accept appellant's contention, however, that all types of the insured's property are required to be covered under section 1952.106, she could simply pay a premium for one vehicle and claim that damage to her other two cars, or limitless subsequently acquired cars, would still be necessarily covered under the UM/UIM statute when an uninsured or underinsured driver causes damage

The section of the insurance code that is the crux of this dispute provides that UM/UIM coverage

> must provide for payment to the insured of all amounts that the insured is legally entitled to recover as damages from owners or operators of underinsured motor vehicles because of bodily injury or property damage, not to exceed the limit specified in the insurance policy, and reduced by the amount recovered or recoverable from the insurer of the underinsured motor vehicle.

Tex. Ins. Code Ann. § 1952.106 (West 2009). While this section relates that UM/UIM coverage must provide payment for all amounts that the insured is entitled to recover for "property damage," it does not define property damage, necessarily imply that all types of property damage must be covered, or expressly state that insurers and insureds are prohibited from agreeing on the scope of property damage to be covered (and therefore adjusting the insured's premium amounts accordingly).

Appellant's argument—that UM/UIM coverage must apply to property damage under all circumstances—is inconsistent with the provisions of other UM/UIM policies that Texas courts have upheld. For example, in *U.S. Fidelity & Guaranty Co. v. Goudeau*, while Goudeau was helping a stranded motorist, he was severely injured when a third driver smashed into both cars. 272 S.W.3d

---

because, like her house, they are still her "property." This would be an absurd result. *See Holyfield v. Members Mut. Ins. Co.*, 566 S.W.2d 28, 30 (Tex. Civ. App.—Dallas) (explaining that an insurer's right to charge premiums based on known risks would be "frustrated if . . . an insured who owns more than one vehicle could insure and pay premiums based solely on the risk attendant to that vehicle, and thereby render the insurer liable for injuries sustained in or because of other vehicles owned by him"), *writ ref'd n.r.e.*, 572 S.W.2d 672 (Tex. 1978).

603, 605 (Tex. 2008). Like appellant, Goudeau recovered from the driver who caused the accident, but he sought to recover more money from his employer's UM/UIM policy. *Id.* The employer's policy, however, only covered personal injury if the driver was occupying his car at the time of the accident, which Goudeau was not; it did not cover all amounts related to any personal injury. *Id.* at 605–06. The supreme court did not hold (and Goudeau apparently did not argue) that such a policy, restricting the scope of risks covered, violated Texas law. *See id.* at 606–10; *see also Rosales*, 835 S.W.2d at 806 ("[A] number of Texas courts have upheld limitations on UM/UIM coverage . . . without concluding that those limitations contravene public policy.").

The policy in *Goudeau* required a causal connection between the insured's covered vehicle and the personal injury. *Goudeau*, 272 S.W.3d at 605–06. Accordingly, various Texas courts have approved UM/UIM policies that, in the context of personal injury claims, restrict coverage to circumstances in which the covered car has a connection to the injury. *See id.* at 606 n.7. For example, in *Berry v. Texas Farm Bureau Mutual Insurance Co.*, the insureds had three automobile insurance policies with Texas Farm Bureau but were injured by an uninsured motorist while occupying a fourth car. 782 S.W.2d 246, 246 (Tex. App.—Waco 1989, writ denied). Texas Farm Bureau's UM/UIM policy excluded recovery for bodily injury sustained while occupying an owned but uninsured vehicle. *Id.* The insureds argued that the exclusion was unenforceable, but the Waco Court of Appeals upheld the exclusion, noting that it had been consistently

9

ruled enforceable by other Texas courts. *Id.* at 247 (citing, among other cases, *Beaupre v. Standard Fire Ins. Co.*, 736 S.W.2d 237, 239 (Tex. App.—Corpus Christi 1987, writ denied)).[9]

We cannot conceive of any material way that appellant's policy, which restricted the scope of coverage by limiting it to a "covered auto" and by narrowly defining "property damage," would contravene the UM/UIM statute if the policies in *Berry*, *Beaupre*, and other owned-but-unscheduled cases do not. *See Berry*, 782 S.W.2d at 247; *Beaupre*, 736 S.W.2d at 239; *see also Conlin v. State Farm Mut. Auto. Ins. Co.*, 828 S.W.2d 332, 337 (Tex. App.—Austin 1992, writ denied) (upholding an owned-but-unscheduled exclusion because an "insurer is entitled to have a policy accurately reflect the risks being insured against and to charge premiums based on those risks"); *Equitable Gen. Ins. Co. v. Williams*, 620 S.W.2d 608, 611 (Tex. Civ. App.—Dallas 1981, writ ref'd n.r.e.) ("[T]he exclusionary clause in the uninsured motorist endorsement is not an invalid denial or restriction of coverage . . . ."). In all of these cases, as in this case, the effect of the policy was to exclude coverage for personal injuries or property damage associated with property owned by the insured but not expressly covered by the policy.

---

[9]At the time of the decision in *Berry*, like today, the UM/UIM statute required coverage for the protection of insureds who were legally entitled to recover damages from the owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, disease, or property damage. *See* Act of May 30, 1981, 67th Leg., R.S., ch. 380, § 1, 1981 Tex. Gen. Laws 1002.

Moreover, we conclude that a policy's term that restricts covered property damage to the automobiles for which premiums are paid is consistent with section 1952.101 of the insurance code, which requires UM/UIM coverage in relation to policies that cover "liability arising out of the ownership, maintenance, or use of any motor vehicle." Tex. Ins. Code Ann. § 1952.101(b). The section protects "*insureds*[10]" who are legally entitled to recover . . . damages for . . . property damage resulting from the ownership, maintenance or use of any motor vehicle." *Id.* § 1952.101(a).[11] The damage to appellant's home did not arise out of the ownership, maintenance, or use of her covered vehicles. Appellant does not argue that coverage should exist under the terms of the policy or as a result of chapter 1952 merely because Birthisel hit the Cadillac, a covered auto, before careening into appellant's home.

For all of these reasons, we hold that the trial court did not err by impliedly finding that appellant's policy with appellee does not violate provisions within

---

[10]As explained above, appellee did not insure appellant's house against damage caused by uninsured or underinsured drivers.

[11]In a 1977 hearing regarding the addition of "property damage" to the types of damage covered by a UM/UIM policy under Texas law, a senator said,

> At the present time when you buy your insurance policy, there is a provision, where you have uninsured motorists, that covers bodily injury. . . . This bill would change it to also include property damage. And this would allow you to recover if someone runs a red light and runs into you and they do not have any property coverage.

Hearing on Tex. S.B. 1256, 65th Leg., R.S. (May 4, 1977), *available at* http://www.lrl.state.tx.us/LASDOCS/65R/SB1256/SB1256_65R.pdf.

chapter 1952 of the insurance code.  We likewise conclude that the trial court did not err by granting summary judgment in favor of appellee to the extent that the judgment rests on a determination that appellee did not breach its insurance policy with appellant by declining coverage for the damage to her house.  We overrule appellant's second issue.

### Appellant's Claim for Damage to the Cadillac

In her first issue, appellant asserts that the trial court improperly granted summary judgment on a claim not raised in appellee's summary judgment motion.  In her pleading, appellant asserted that appellee had breached the insurance policy by failing to pay for the damage to her Cadillac.  Appellee did not expressly seek summary judgment on appellant's claim for the damage to the Cadillac; in fact, appellee stated in its motion, "Damage to the Cadillac is not at issue in this dispute."  But the trial court's judgment decreed that appellant take nothing by her suit, and the judgment finally disposed of all claims.

A motion for summary judgment must "state the specific grounds therefor." Tex. R. Civ. P. 166a(c).  Thus, a trial court errs by granting more relief than a party requests in a motion for summary judgment.  *See Page v. Geller*, 941 S.W.2d 101, 102 (Tex. 1997).  When a trial court has correctly granted summary judgment on a claim raised in the summary judgment motion but has incorrectly granted summary judgment on an unaddressed claim, we must reverse and remand as to the unaddressed claim.  *See Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 204 (Tex. 2002); *Bandera Elec. Co-op., Inc. v. Gilchrist*, 946

12

S.W.2d 336, 337 (Tex. 1997); *Leyva v. Ace Am. Ins. Co.*, 330 S.W.3d 6, 11 (Tex. App.—El Paso 2010, no pet.).

In its brief, appellee concedes "that the issue of the property damage claim to [appellant's] vehicle was not included in its summary judgment motion." Appellee contends, however, that the trial court's granting summary judgment on the claim regarding appellant's Cadillac was harmless error because appellant "failed to establish that she was legally entitled to recover additional damages from her insurer on top of the settlement she received from Birthisel's insurer." Appellee, therefore, essentially asks us to affirm the judgment on a different basis than it raised in the trial court. We may not do so. *See Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003) ("[W]e must affirm the summary judgment if any of the theories *presented to the trial court and preserved for appellate review* are meritorious.") (emphasis added); *Cadenhead v. Hatcher*, 13 S.W.3d 861, 864 (Tex. App.—Fort Worth 2000, no pet.) ("[A] defendant's motion for summary judgment can be affirmed only on grounds expressly raised in its motion for summary judgment."); *see also McConnell v. Southside ISD*, 858 S.W.2d 337, 341 (Tex. 1993) ("A motion must stand or fall on the grounds expressly presented in the motion.").

We cannot fault appellant for failing to establish entitlement to recovery for the damage to her Cadillac when appellee's motion for summary judgment did not give her notice that she needed to do so at the summary judgment stage. Because appellee did not request summary judgment regarding the claim for

damage to the Cadillac on the ground argued in its brief on appeal, we conclude that we must reverse and remand the trial court's judgment as to that claim. We sustain appellant's first issue.

## Conclusion

Having overruled appellant's second issue and having sustained her first issue, we affirm the trial court's decision to grant summary judgment against appellant's breach of contract claim with regard to the damage to her house, and we reverse the trial court's decision to grant summary judgment against appellant's breach of contract claim with regard to the damage to her Cadillac. We remand this case to the trial court for further proceedings related to the claim regarding the Cadillac.

TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL:  LIVINGSTON, C.J.; MCCOY and GABRIEL, JJ.

DELIVERED:  January 12, 2012

14