02-10-312-CV









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-10-00312-CV

 

 


 
 
 Carolina Ibarra
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 Progressive County Mutual Insurance Company
 
 
  
 
 
 APPELLEE
 
 


 

 

----------

 

FROM County
Court at Law No. 2 OF Tarrant COUNTY

----------

 

MEMORANDUM
OPINION[1]

----------

          This
appeal concerns an insurance coverage dispute.  Appellant Carolina Ibarra
appeals the trial court’s decision to grant the motion for summary judgment
filed by appellee Progressive County Mutual Insurance Company.  In two issues,
appellant argues that the trial court wrongly granted judgment against a claim
that appellee did not challenge in its motion and that appellant’s
uninsured/underinsured motorist insurance policy (UM/UIM) with appellee improperly
restricts coverage and therefore violates Texas law.  We affirm in part and
reverse and remand in part.

Background
Facts

          It
is undisputed that on an early morning in the summer of 2009, Sarah Birthisel
lost control of her car, which jumped a curb at appellant’s home, struck
appellant’s 1984 Cadillac (which was in her driveway), and crashed through the
wall of the home, stopping inside the kitchen.  The Cadillac, valued by
appellant at $2,000, was totaled.  The damage to appellant’s home requires
reconstruction that will cost approximately $50,000.[2]

          A
Tarrant County court convicted Birthisel of driving while intoxicated based on
her guilty plea.  Birthisel had automobile insurance through Liberty Mutual,
which paid appellant $25,000, the policy’s limit, to account for part of the
damage caused to appellant’s car and property.  Appellant had her own automobile
insurance coverage with appellee, for which appellee charged semiannual
premiums.  The policy included UM/UIM coverage of up to $25,055 per accident for
property damage for appellant’s three cars.  The UM/UIM portion of the policy
stated in part,

 

INSURING AGREEMENT – UNINSURED/UNDERINSURED
MOTORIST PROPERTY DAMAGE COVERAGE

          If you pay the premium for this
coverage, we will pay for damages that an insured person is
legally entitled to recover from the owner or operator of an uninsured motor
vehicle[[3]] due to property
damage to a covered auto:

          1.       caused
by an accident; and

          2.       arising
out of the ownership, maintenance, or use of an    

                   uninsured
motor vehicle.

The
policy defined “property damage” as physical damage to, or destruction or loss
of use of (1) a covered auto, (2) any property owned by an insured person and
contained in the covered auto at the time of the accident, and (3) any property
owned by appellant or a relative while contained in an auto being operated by
appellant or her relative.  Another part of the UM/UIM coverage stated that
property damage to a covered auto would be limited to the cash value of the
covered auto or the amount necessary to replace or repair it.

          Appellant
submitted a claim under her UM/UIM coverage for recovery of the balance of the
damage to her house, but appellee denied the claim.  Appellant then sued
appellee for allegedly breaching the policy, seeking damages and attorney’s
fees.[4]

          Appellee
answered through a general denial and then filed a motion for summary judgment
that was based on appellee’s argument that the benefits claimed by appellant
for the damage to her house are not covered under the plain language of the UM/UIM
portion of appellant’s policy.  Appellee asserted that the damage was not
covered because the home was not a covered auto, was not contained within a
covered auto, and was not property located in an auto operated by appellant or
her relative.  Appellant responded to appellee’s motion by contending that the
provisions of her insurance policy relating to UM/UIM coverage are invalid
because they violate two sections of the insurance code.

          The
trial court granted appellee’s summary judgment motion, ordering that appellant
take nothing by her suit.  Appellant brought this appeal.

The
Scope of Appellant’s UM/UIM Coverage

          In
her second issue, appellant contends that the trial court erred by granting
summary judgment for appellee because her UM/UIM policy improperly limits the
scope of property damage coverage.  In a summary judgment case, the issue on
appeal is whether the movant met the summary judgment burden by establishing
that no genuine issue of material fact exists and that the movant is entitled
to judgment as a matter of law.  Tex. R. Civ. P. 166a(c); Mann Frankfort
Stein & Lipp Advisors, Inc. v. Fielding, 289 S.W.3d 844, 848 (Tex.
2009).  We review a summary judgment de novo.  Travelers Ins. Co. v.
Joachim, 315 S.W.3d 860, 862 (Tex. 2010).  A defendant who conclusively negates
at least one essential element of a cause of action is entitled to summary
judgment on that claim.  Frost Nat’l Bank v. Fernandez, 315 S.W.3d 494,
508 (Tex. 2010), cert. denied, 131 S. Ct. 1017 (2011).

          Insurance
is an agreement by which one party assumes a risk faced by another in return
for a premium payment.  See Black’s Law Dictionary 870 (9th ed. 2009).  Insurance
policies are contracts.  Rice v. Metro. Life Ins. Co., 324 S.W.3d 660,
666 (Tex. App.—Fort Worth 2010, no pet.); see Markel Ins. Co. v. Muzyka,
293 S.W.3d 380, 385–86 (Tex. App.—Fort Worth 2009, no pet.) (describing various
principles of contract interpretation that apply to insurance policies).  “The
elements of a breach of contract claim are (1) the existence of a valid
contract, (2) performance or tendered performance by the plaintiff, (3) breach
of the contract by the defendant, and (4) resulting damages to the plaintiff.” 
Rice, 324 S.W.3d at 666 (quoting Fieldtech Avionics &
Instruments, Inc. v. Component Control.Com, Inc., 262 S.W.3d 813, 825 (Tex.
App.—Fort Worth 2008, no pet.)).

          Appellant
concedes that damage to her house is not covered under the express terms of her
policy, but she contends that the policy violates the insurance code and should
be reformed.  Policy provisions, even if approved by the department of
insurance, are invalid if they are inconsistent with express statutory
requirements or purposes.[5]  Mid-Century Ins. Co.
of Tex. v. Kidd, 997 S.W.2d 265, 271–72 (Tex. 1999); Westchester Fire
Ins. Co. v. Admiral Ins. Co., 152 S.W.3d 172, 184 (Tex. App.—Fort Worth
2004, pet. denied) (en banc op. on reh’g).  In construing statutes, we “ascertain
and give effect to the legislature’s intent as expressed by the language of the
statute.  We construe a statute according to the plain meaning of its words
unless a contrary intention is apparent from the context, or unless such a
construction leads to absurd results.” Wood v. Tex. Dep’t of Pub. Safety,
331 S.W.3d 78, 80 (Tex. App.—Fort Worth 2010, no pet.) (citation omitted).

          UM/UIM
coverage “protects insureds who are legally entitled to recover from
owners or operators of uninsured or underinsured motor vehicles damages for
bodily injury, sickness, disease, or death, or property damage resulting from
the ownership, maintenance, or use of any motor vehicle.”  Tex. Ins. Code Ann.
§ 1952.101(a) (West 2009) (emphasis added).  In Texas, insurers may not
issue an automobile insurance policy unless the insurer provides UM/UIM
coverage or the insured rejects such coverage in writing.  Id. § 1952.101(b)–(c);
see also id. § 2301.053(b) (West 2009) (“Each form for a personal
automobile insurance policy must provide the coverages mandated under
Subchapters C and D, Chapter 1952, unless the coverages are rejected by the
named insured in the manner provided by those subchapters.”).[6] 
The purpose of the UM/UIM statute, as stated by the legislature and the supreme
court, is to protect motorists from financial loss caused by other negligent,
financially irresponsible motorists.  Stracener v. United Servs. Auto. Ass’n,
777 S.W.2d 378, 382 (Tex. 1989); see Rosales v. State Farm Mut. Auto. Ins.
Co., 835 S.W.2d 804, 805 (Tex. App.—Austin 1992, writ denied); see also
Act of May 3, 1967, 60th Leg., R.S., ch. 202, § 3, 1967 Tex. Gen. Laws 449 (“[T]he
people of Texas are constantly exposed to financial loss caused by negligent
financially irresponsible motorists . . . [and] it is the . . . purpose of
this Act to provide a means of protecting the conscientious and thoughtful
motorist . . . .”) (emphasis added).[7]  This purpose is consistent
with the facts that appellant’s UM/UIM coverage was included as part of her
general automobile insurance policy and that she paid separate UM/UIM
premiums for each of her covered cars.[8]

          The
section of the insurance code that is the crux of this dispute provides that UM/UIM
coverage

must provide for payment to the insured of all amounts
that the insured is legally entitled to recover as damages from owners or
operators of underinsured motor vehicles because of bodily injury or property
damage, not to exceed the limit specified in the insurance policy, and reduced
by the amount recovered or recoverable from the insurer of the underinsured
motor vehicle.

Tex.
Ins. Code Ann. § 1952.106 (West 2009).  While this section relates that UM/UIM
coverage must provide payment for all amounts that the insured is entitled to
recover for “property damage,” it does not define property damage, necessarily
imply that all types of property damage must be covered, or expressly state
that insurers and insureds are prohibited from agreeing on the scope of
property damage to be covered (and therefore adjusting the insured’s premium
amounts accordingly).

          Appellant’s
argument—that UM/UIM coverage must apply to property damage under all
circumstances—is inconsistent with the provisions of other UM/UIM policies that
Texas courts have upheld.  For example, in U.S. Fidelity & Guaranty Co.
v. Goudeau, while Goudeau was helping a stranded motorist, he was severely
injured when a third driver smashed into both cars.  272 S.W.3d 603, 605 (Tex.
2008).  Like appellant, Goudeau recovered from the driver who caused the
accident, but he sought to recover more money from his employer’s UM/UIM
policy.  Id.  The employer’s policy, however, only covered personal
injury if the driver was occupying his car at the time of the accident, which
Goudeau was not; it did not cover all amounts related to any personal injury.  Id.
at 605–06.  The supreme court did not hold (and Goudeau apparently did not
argue) that such a policy, restricting the scope of risks covered, violated
Texas law.  See id. at 606–10; see also Rosales, 835
S.W.2d at 806 (“[A] number of Texas courts have upheld limitations on UM/UIM
coverage . . . without concluding that those limitations contravene public
policy.”).

          The
policy in Goudeau required a causal connection between the insured’s
covered vehicle and the personal injury.  Goudeau, 272 S.W.3d at 605–06. 
Accordingly, various Texas courts have approved UM/UIM policies that, in the
context of personal injury claims, restrict coverage to circumstances in which
the covered car has a connection to the injury.  See id. at 606 n.7. 
For example, in Berry v. Texas Farm Bureau Mutual Insurance Co., the
insureds had three automobile insurance policies with Texas Farm Bureau but
were injured by an uninsured motorist while occupying a fourth car.  782 S.W.2d
246, 246 (Tex. App.—Waco 1989, writ denied).  Texas Farm Bureau’s UM/UIM policy
excluded recovery for bodily injury sustained while occupying an owned but uninsured
vehicle.  Id.  The insureds argued that the exclusion was unenforceable,
but the Waco Court of Appeals upheld the exclusion, noting that it had been consistently
ruled enforceable by other Texas courts.  Id. at 247 (citing, among
other cases, Beaupre v. Standard Fire Ins. Co., 736 S.W.2d 237, 239
(Tex. App.—Corpus Christi 1987, writ denied)).[9]

          We
cannot conceive of any material way that appellant’s policy, which restricted
the scope of coverage by limiting it to a “covered auto” and by narrowly defining
“property damage,” would contravene the UM/UIM statute if the policies in Berry,
Beaupre, and other owned-but-unscheduled cases do not.  See
Berry, 782 S.W.2d at 247; Beaupre, 736 S.W.2d at 239; see also Conlin
v. State Farm Mut. Auto. Ins. Co., 828 S.W.2d 332, 337 (Tex. App.—Austin
1992, writ denied) (upholding an owned-but-unscheduled exclusion because an “insurer
is entitled to have a policy accurately reflect the risks being insured against
and to charge premiums based on those risks”); Equitable Gen. Ins. Co. v.
Williams, 620 S.W.2d 608, 611 (Tex. Civ. App.—Dallas 1981, writ ref’d
n.r.e.) (“[T]he exclusionary clause in the uninsured motorist endorsement is
not an invalid denial or restriction of coverage . . . .”).  In all of
these cases, as in this case, the effect of the policy was to exclude coverage
for personal injuries or property damage associated with property owned by the
insured but not expressly covered by the policy. 

          Moreover,
we conclude that a policy’s term that restricts covered property damage to the
automobiles for which premiums are paid is consistent with section 1952.101 of
the insurance code, which requires UM/UIM coverage in relation to policies that
cover “liability arising out of the ownership, maintenance, or use of any motor
vehicle.”  Tex. Ins. Code Ann. § 1952.101(b).  The section protects “insureds[[10]]
who are legally entitled to recover . . . damages for . . . property damage
resulting from the ownership, maintenance or use of any motor vehicle.”  Id.
§ 1952.101(a).[11]  The damage to appellant’s
home did not arise out of the ownership, maintenance, or use of her covered
vehicles.  Appellant does not argue that coverage should exist under the terms
of the policy or as a result of chapter 1952 merely because Birthisel hit the
Cadillac, a covered auto, before careening into appellant’s home.

          For
all of these reasons, we hold that the trial court did not err by impliedly
finding that appellant’s policy with appellee does not violate provisions within
chapter 1952 of the insurance code.  We likewise conclude that the trial court
did not err by granting summary judgment in favor of appellee to the extent
that the judgment rests on a determination that appellee did not breach its
insurance policy with appellant by declining coverage for the damage to her
house.  We overrule appellant’s second issue.

Appellant’s
Claim for Damage to the Cadillac

          In
her first issue, appellant asserts that the trial court improperly granted
summary judgment on a claim not raised in appellee’s summary judgment motion.  In
her pleading, appellant asserted that appellee had breached the insurance
policy by failing to pay for the damage to her Cadillac.  Appellee did not expressly
seek summary judgment on appellant’s claim for the damage to the Cadillac; in
fact, appellee stated in its motion, “Damage to the Cadillac is not at issue in
this dispute.”  But the trial court’s judgment decreed that appellant take
nothing by her suit, and the judgment finally disposed of all claims.

          A
motion for summary judgment must “state the specific grounds therefor.” Tex. R.
Civ. P. 166a(c).  Thus, a trial court errs by granting more relief than a party
requests in a motion for summary judgment.  See Page v. Geller, 941
S.W.2d 101, 102 (Tex. 1997).  When a trial court has correctly granted summary
judgment on a claim raised in the summary judgment motion but has incorrectly
granted summary judgment on an unaddressed claim, we must reverse and remand as
to the unaddressed claim.  See Johnson v. Brewer & Pritchard, P.C.,
73 S.W.3d 193, 204 (Tex. 2002); Bandera Elec. Co-op., Inc. v. Gilchrist,
946 S.W.2d 336, 337 (Tex. 1997); Leyva v. Ace Am. Ins. Co., 330 S.W.3d
6, 11 (Tex. App.—El Paso 2010, no pet.).

          In
its brief, appellee concedes “that the issue of the property damage claim to
[appellant’s] vehicle was not included in its summary judgment motion.”  Appellee
contends, however, that the trial court’s granting summary judgment on the
claim regarding appellant’s Cadillac was harmless error because appellant
“failed to establish that she was legally entitled to recover additional
damages from her insurer on top of the settlement she received from Birthisel’s
insurer.”  Appellee, therefore, essentially asks us to affirm the judgment on a
different basis than it raised in the trial court.  We may not do so.  See
Provident Life & Acc. Ins. Co. v. Knott, 128 S.W.3d 211, 216 (Tex.
2003) (“[W]e must affirm the summary judgment if any of the theories presented
to the trial court and preserved for appellate review are meritorious.”)
(emphasis added); Cadenhead v. Hatcher, 13 S.W.3d 861, 864 (Tex.
App.—Fort Worth 2000, no pet.) (“[A] defendant’s motion for summary judgment
can be affirmed only on grounds expressly raised in its motion for summary
judgment.”); see also McConnell v. Southside ISD, 858 S.W.2d 337, 341
(Tex. 1993) (“A motion must stand or fall on the grounds expressly presented in
the motion.”).

          We
cannot fault appellant for failing to establish entitlement to recovery for the
damage to her Cadillac when appellee’s motion for summary judgment did not give
her notice that she needed to do so at the summary judgment stage.  Because
appellee did not request summary judgment regarding the claim for damage to the
Cadillac on the ground argued in its brief on appeal, we conclude that we must
reverse and remand the trial court’s judgment as to that claim. We sustain
appellant’s first issue.

Conclusion

          Having
overruled appellant’s second issue and having sustained her first issue, we
affirm the trial court’s decision to grant summary judgment against appellant’s
breach of contract claim with regard to the damage to her house, and we reverse
the trial court’s decision to grant summary judgment against appellant’s breach
of contract claim with regard to the damage to her Cadillac.  We remand this case
to the trial court for further proceedings related to the claim regarding the
Cadillac.

 

 

 

TERRIE LIVINGSTON
CHIEF JUSTICE

 

PANEL: 
LIVINGSTON,
C.J.; MCCOY and GABRIEL, JJ.

 

DELIVERED:  January 12, 2012









[1]See Tex. R. App. P. 47.4.





[2]A contractor submitted an
affidavit in which he opined that the accident pushed the framing loose from
the slab, requiring the home to be completely rebuilt.





[3]The policy’s definition of
an uninsured motor vehicle included an underinsured motor vehicle.





[4]Appellant stated in her
pleading that appellee’s “failure to pay any amount under the
uninsured/underinsured portion of the policy . . . constitutes a breach of its
contract of insurance.”





[5]Appellee asserts that its
UM/UIM policy was “accepted and adopted by the Texas Department of Insurance on
November 15, 2006.”  Appellant does not contest this assertion.  See
Tex. R. App. P. 38.1(g) (“In a civil case, the court will accept as true the
facts stated unless another party contradicts them.”).





[6]The insurance code defines
personal automobile insurance as coverage for the ownership, maintenance, or
use of a “private passenger, utility, or miscellaneous type motor vehicle,
including a motor home, trailer, or recreational vehicle.”  Tex. Ins. Code Ann.
§ 2301.051(2) (West 2009).  The code contains a separate definition for
“residential property insurance,” which covers losses to “residential real
property at a fixed location.”  Id. § 2301.051(3).





[7]The UM/UIM statute is to
be construed “liberally to give full effect to the public policy which led
to its enactment.”  Stracener, 777 S.W.2d at 382 (emphasis added).





[8]Appellant paid a six-month
premium of $1,118.50 for her automobile insurance.  That amount covered three
cars, including the damaged 1984 Cadillac.  For UM/UIM property damage coverage,
appellant paid semiannual premiums of $13 for a 1999 Chevrolet, $16 for the
Cadillac, and $34 for a 2007 Chevrolet.  Thus, it seems clear that appellant’s
UM/UIM coverage was tied to some distinguishing characteristic of the vehicles
or the value of them.  If we were to accept appellant’s contention, however,
that all types of the insured’s property are required to be covered under
section 1952.106, she could simply pay a premium for one vehicle and claim that
damage to her other two cars, or limitless subsequently acquired cars, would
still be necessarily covered under the UM/UIM statute when an uninsured or
underinsured driver causes damage because, like her house, they are still her
“property.”  This would be an absurd result.  See Holyfield v. Members Mut.
Ins. Co., 566 S.W.2d 28, 30 (Tex. Civ. App.—Dallas) (explaining that an
insurer’s right to charge premiums based on known risks would be “frustrated if
. . . an insured who owns more than one vehicle could insure and pay premiums
based solely on the risk attendant to that vehicle, and thereby render the
insurer liable for injuries sustained in or because of other vehicles owned by
him”), writ ref’d n.r.e., 572 S.W.2d 672 (Tex. 1978).





[9]At the time of the
decision in Berry, like today, the UM/UIM statute required coverage for
the protection of insureds who were legally entitled to recover damages from
the owners or operators of uninsured or underinsured  motor vehicles because of
bodily injury, sickness, disease, or property damage.  See Act of May 30,
1981, 67th Leg., R.S., ch. 380, § 1, 1981 Tex. Gen. Laws 1002.





[10]As explained above,
appellee did not insure appellant’s house against damage caused by uninsured or
underinsured drivers.





[11]In a 1977 hearing
regarding the addition of “property damage” to the types of damage covered by a
UM/UIM policy under Texas law,  a senator said,

At the present time when you buy your
insurance policy, there is a provision, where you have uninsured motorists,
that covers bodily injury. . . .  This bill would change it to also include
property damage.  And this would allow you to recover if someone runs a red
light and runs into you and they do not have any property coverage.

Hearing
on Tex. S.B. 1256, 65th Leg., R.S. (May 4, 1977), available at http://www.lrl.state.tx.us/LASDOCS/65R/SB1256/SB1256_65R.pdf.