

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-10-00120-CV

BARRY M. WOOD, JR.                                                APPELLANT

V.

TEXAS DEPARTMENT                                                    APPELLEE
OF PUBLIC SAFETY

------------

## FROM COUNTY COURT AT LAW NO. 2 OF TARRANT COUNTY

------------

## OPINION

------------

Barry Montgomery Wood Jr., appeals pro se the denial of his petition for an occupational license.

Mr. Wood's driver's license was suspended in 2005 for a number of offenses, including two convictions for driving while intoxicated and one for driving while his license was invalid. The last of these suspensions was lifted in 2007. Mr. Wood was incarcerated in 2008 for an unrelated offense and released

in March 2010 under a three-year term of supervised release. As part of his supervised release, Mr. Wood secured employment, and he is required to attend AA meetings, counseling sessions, and submit to random drug testing.

Mr. Wood applied to renew his driver's license but was denied because he owes $8,580.00 in surcharges under the Driver Responsibility Program. The program assesses surcharges to drivers for various driving-related convictions and requires suspension of a person's driver's license if he fails to pay the amounts assessed. Tex. Transp. Code. Ann. §§ 708.002–.158 (Vernon Supp. 2010). The suspension continues until the driver pays the surcharges or enters into an installment payment plan. *Id*. § 708.152.

Mr. Wood is indigent and unable to pay the surcharges to lift the suspension. The Department of Public Safety (DPS) sent Mr. Wood a letter explaining that DPS would be implementing various programs to reduce or waive surcharges for those who cannot pay them, but none of those programs will be in effect until 2011. The letter also provided Mr. Wood instructions for applying for an occupational license.

Mr. Wood then petitioned the trial court for an occupational license, claiming that his license was suspended for his failure to pay the surcharges and that he has an essential need for transportation to and from work and other locations as required by his probation plan. There is no reporter's record of the hearing, but the clerk's record shows that DPS submitted a memorandum after the hearing in which it argued that a person suspended for failure to pay the

2

Driver Responsibility Program surcharges is not of the class of people to which an occupational license may be granted.[1] The court denied Mr. Wood's petition for an occupational license "for petitioner's failure to pay surcharges or enter into an installment agreement." Mr. Wood appealed. We construe his argument on appeal to be that the court erred in denying his petition because he is of the class of persons eligible for an occupational license and that he demonstrated essential need. For the reasons below, we find that Mr. Wood should not have been denied an occupational license for his failure to pay the surcharges.

**Standard of Review**

In a trial to the court where no findings of fact or conclusions of law are filed, the trial court's judgment implies all findings of fact necessary to support it. *Pharo v. Chambers Cnty.*, 922 S.W.2d 945, 948 (Tex. 1996). In cases such as this one where no reporter's record was made, we indulge every presumption in favor of the trial court's judgment. *See Bryant v. United Shortline Inc. Assurance Servs., N.A.*, 972 S.W. 2d 26, 31 (Tex. 1998).

---

[1]In its post-hearing memorandum of law, DPS argued that "license" is defined in the transportation code as including an occupational license, Tex. Transp. Code Ann. § 521.001(6) (Vernon 2007), and therefore, because the surcharge statute suspends a person's "license" for failure to pay, *id*. § 708.152(b), a person suspended under the surcharge statute may not be granted an occupational license because that license too is suspended. We note that this is not the same argument that DPS makes on appeal. We do however believe it is clear from the record that DPS has consistently argued in this case that, for various reasons, a person suspended for failure to pay surcharges is ineligible for an occupational license.

3

**Discussion**

The occupational license statute provides for "[a] person whose license has been suspended for a cause other than a physical or mental disability or impairment or a conviction under Section 49.04, Penal Code" to petition the court for an occupational license. Tex. Transp. Code Ann. § 521.242 (Vernon 2007).[2] The petition for an occupational license must describe the petitioner's "essential need" for the license, which is defined as a need to operate a motor vehicle

    (A)  in the performance of an occupation or trade or for transportation to and from the place at which the person practices the person's occupation or trade;

    (B)  for transportation to and from an educational facility in which the person is enrolled; or

    (C)  in the performance of essential household duties.

*Id*. § 521.241 (Vernon 2007).[3] While Mr. Wood had previously been convicted of driving while intoxicated, the corresponding suspensions had all been lifted as of September 2007. The only current suspension on Mr. Wood's driving license is for his failure to pay the Driver Responsibility Program surcharges.

Statutory construction is a legal question we review de novo. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625 (Tex. 2008). In construing statutes, we ascertain and give effect to the legislature's intent as expressed by the

---

[2] Section 49.04 of the penal code concerns driving while intoxicated. Tex. Pen. Code Ann. § 49.04 (Vernon 2010).

[3] DPS does not appear to dispute Mr. Wood's essential need for an occupational license.

4

language of the statute. *Id*. We construe a statute according to the plain meaning of its words unless a contrary intention is apparent from the context, or unless such a construction leads to absurd results. *Id*. at 625–26; *see also Tex. Dep't of Protective & Regulatory Servs. v. Mega Child Care, Inc.,* 145 S.W.3d 170, 177 (Tex. 2004) (noting that when statutory text is unambiguous, courts must adopt the interpretation supported by the statute's plain language unless that interpretation would lead to absurd results).

DPS argues that construing the statute by its plain language would lead to an absurd result. There is no statutory limit on the number of successive occupational licenses that may be granted to a driver who has been suspended for reasons other than criminal convictions. *See* Tex. Transp. Code Ann. § 521.242. Because a suspension is in effect until the payment of the surcharges, *id*. § 708.152(b), DPS argues that a suspended driver could indefinitely avoid paying the surcharges by continuously petitioning for occupational licenses.

The statute is not ambiguous as to who may apply for an occupational license, and thus we rely on its plain meaning. *See Mega Child Care,* 145 S.W. 3d at 177. Mr. Wood's license is not suspended for any of the listed reasons which would prohibit him from obtaining an occupational license. The statutory list is exclusive, and we cannot expand it. *Cf. Christus Health v. Beal*, 240 S.W.3d 282, 286 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (stating that "[u]se of the word 'including' makes the list nonexclusive," and noting that before

5

the statute was amended to add "including" in the definition, list of "health care providers" was an exclusive list); Tex. Gov't Code Ann. § 311.005(13) (providing that "includes" indicates an intent to create a nonexclusive list). If the legislature had intended that drivers suspended for failure to pay surcharges be ineligible for occupational licenses, we believe it would have said so. Because it has not, Mr. Wood is eligible to petition for an occupational license.

The Occupational License Act anticipates that some drivers would be unable to pay their surcharges. Tex. Transp. Code. Ann. §§ 708.157(c), 708.158 (Vernon Supp. 2010). DPS has indicated a concern that indigent suspended drivers would be effectively permanently suspended. *See* 32 Tex. Reg. 9295 (2007), *adopted* 33 Tex. Reg. 2041 (2008) (to be codified as an amendment to 37 Tex. Admin. Code § 15.162). The legislature has addressed this problem prospectively though statutes which require DPS to establish indigency programs. *See* Tex. Transp. Code. Ann. § 708.157 (c), 708.158; 35 Tex. Reg. 9920 (2010) (to be codified at 37 Tex. Admin. Code § 15.163).[4] The stated intent in creating the programs was to "ensur[e] the license holder remains in compliance with the law and in compliance with the surcharge program." 35 Tex. Reg. 9920 (2010).

---

[4] We note that these programs are not yet in effect, and thus Mr. Wood is unable to take advantage of them at this time.

6

Even when construing a statute that is unambiguous, the Code Construction Act allows for consideration of the object sought to be obtained and the legislative intent. Tex. Gov't Code Ann. § 311.023; *see also Tex. Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 642 (Tex. 2004). The very intent of the indigency program belies DPS's argument in this appeal that construing section 521.242 according to its plain language would lead to an absurd result. That result is that a person whose license is suspended because of his inability to pay surcharges may be able to obtain a license to legally drive for certain essential needs. That is the same result the legislature and DPS has deemed appropriate. *See* Tex. Transp. Code. Ann. § 708.157(c), 708.158; 35 Tex. Reg. 9920 (2010) (to be codified at 37 Tex. Admin. Code § 15.163). We therefore believe that the legislature intended to allow a driver suspended under the Driver Responsibility Act to petition for an occupational license.

The statute is clear in its use of mandatory language that "the judge who hears the petition shall sign an order finding whether an essential need exists." Tex. Transp. Code. Ann. § 521.244(a). The trial court did not deny Mr. Wood based on his lack of essential need as required by the statute. Rather, the trial court specified that it denied Mr. Wood's petition based on his "failure to pay surcharges or enter into an installment payment agreement." Accordingly, the trial court's denial of Mr. Wood's petition was without reference to any guiding rule or principle and was an abuse of discretion.

7

The trial court erred in denying Mr. Wood's petition based on his failure to pay his surcharges. We reverse the trial court's judgment and remand the case to the trial court to determine Mr. Wood's essential need as required by the statute.

LEE GABRIEL
JUSTICE

PANEL: GARDNER, WALKER, and GABRIEL, JJ.

DELIVERED: November 24, 2010