

# COURT OF APPEALS

## SECOND DISTRICT OF TEXAS
### FORT WORTH

**NO. 02-14-00358-CV**

SHAWN SHAMAEI                                                    APPELLANT

V.

KEITH CONWAY                                                      APPELLEE

----------

FROM COUNTY COURT AT LAW NO. 3 OF TARRANT COUNTY
TRIAL COURT NO. 2013-005639-3

----------

## MEMORANDUM OPINION[1]

----------

## I. Introduction

In a single issue, appellant Shawn Shamaei appeals from the trial court's judgment awarding recovery to appellee Keith Conway on his breach of contract claim. We affirm.

---

[1]*See* Tex. R. App. P. 47.4.

## II. Facts

In December 2012, Shamaei and Conway entered into an oral contract whereby Conway, a licensed architect, would prepare architectural plans to remodel a building owned by Shamaei. Shamaei needed the renovation work to prevent the City of Euless from demolishing his building.

Although both parties agreed that Conway's compensation rate was $50 per hour, the parties disagreed as to the total amount that was agreed to be paid under the contract. Conway testified that they agreed he would receive $50 per hour until the architectural work was completed, but Shamaei testified that Conway would receive $50 per hour, not to exceed $5,000, representing no more than 100 total hours of work.[2]

Conway worked on the project from mid-December 2012 until the end of February 2013 and submitted periodic invoices to Shamaei totaling $15,450.

---

[2]Shamaei testified as follows:

A: [H]e told me that he's going to charge me $50 per hour. And I ask him how long does it take him to do -- how long -- how does he charge. He says he does by the hour. And I told him by measurement and the design that he has, how long is [it] going to take him to do it? He said maximum a hundred hours. I knew it was too much for that, you know, 1300 square feet building, but I did it for 100 hours maximum for $50 per hour.

Q: So that's $5,000?

A: $5,000 his fee exactly.

Shamaei paid some, but not all, of the invoices, leaving an unpaid balance of $9,450. Shamaei did not complain about any of the amounts billed until approximately a month after the final invoice had been submitted, by which time Shamaei had used the architectural services provided by Conway, the remodeling work had been completed, and the building had been saved from demolition. Conway sued Shamaei for breach of contract after Shamaei refused to pay his final invoice.

The trial court awarded $7,850[3] to Conway on the contract claim, plus attorney's fees, prejudgment interest, post judgment interest, and costs. Neither party requested findings of fact and conclusions of law, and none were made by the trial court.

## III. Analysis

In his single issue, Shamaei complains that the trial court erred by finding that a contract existed because an essential term was missing, i.e., the maximum amount of hours it would take to complete the work, and because Conway failed to present any evidence of the reasonable value for the architectural services rendered.

---

[3]This figure took into account Conway's testimony that he had mistakenly over-billed Shamaei in the amount of $1,000, along with a subtraction of $600 that Conway billed for a "site visit" and that the trial court apparently found not to be part of the agreement.

**A. Standard of Review**

In a trial to the court in which no findings of fact or conclusions of law are filed, the trial court's judgment implies all findings of fact necessary to support it. *Rosemond v. Al-Lahiq*, 331 S.W.3d 764, 766–67 (Tex. 2011); *Wood v. Tex. Dep't of Pub. Safety*, 331 S.W.3d 78, 79 (Tex. App.—Fort Worth 2010, no pet.). When a reporter's record is filed, however, these implied findings are not conclusive, and an appellant may challenge them by raising both legal and factual sufficiency of the evidence issues. When such issues are raised, the applicable standard of review is the same as that to be applied in the review of jury findings or a trial court's findings of fact. *Roberson v. Robinson*, 768 S.W.2d 280, 281 (Tex. 1989); *Liberty Mut. Ins. Co. v. Burk*, 295 S.W.3d 771, 777 (Tex. App.—Fort Worth 2009, no pet.). The judgment must be affirmed if it can be upheld on any legal theory that finds support in the record. *Rosemond*, 331 S.W.3d at 767; *Liberty Mut.*, 295 S.W.3d at 777.

We may sustain a legal sufficiency challenge only when (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998), *cert. denied*, 526 U.S. 1040 (1999); Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Tex. L. Rev. 361, 362–63 (1960). In

determining whether there is legally sufficient evidence to support the finding under review, we must consider evidence favorable to the finding if a reasonable factfinder could and disregard evidence contrary to the finding unless a reasonable factfinder could not. *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 827 (Tex. 2005).

Anything more than a scintilla of evidence is legally sufficient to support the finding. *Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex. 1996); *Leitch v. Hornsby*, 935 S.W.2d 114, 118 (Tex. 1996). More than a scintilla of evidence exists if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about the existence of a vital fact. *Rocor Int'l, Inc. v. Nat'l Union Fire Ins. Co.*, 77 S.W.3d 253, 262 (Tex. 2002).

Any ultimate fact may be proved by circumstantial evidence. *Russell v. Russell*, 865 S.W.2d 929, 933 (Tex. 1993). A fact is established by circumstantial evidence when the fact may be fairly and reasonably inferred from other facts proved in the case. *Id.*

## B. Terms of the Contract

Shamaei argues that trial court erred by permitting recovery because there was no agreement on the maximum number of hours it would take to complete the job. Without a cap on the number of hours to be worked, the total maximum

5

contract price cannot be calculated.[4] Shamaei argues that a total maximum contract price is an "essential term," without which the contract is unenforceable.

While Shamaei is correct that essential terms of a contract must be agreed upon before a court can enforce it, *see T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992), when parties have done everything else necessary to make a binding agreement for services, even the failure to specify a price will not leave the contract so incomplete that it cannot be enforced. *Pennington v. Gurkoff*, 899 S.W.2d 767, 770 (Tex. App.—Fort Worth 1995, writ denied). In such a case, a presumption arises that a reasonable price was intended. *Id.* (citing *Bendalin v. Delgado*, 406 S.W.2d 897, 900 (Tex. 1966); *Polland & Cook v. Lehmann*, 832 S.W.2d 729, 739–40 (Tex. App.—Houston [1st Dist.] 1992, writ denied)).

In this case, Shamaei received Conway's second invoice by email on February 23. This invoice billed for 110 hours of Conway's work, an amount which, on its face, exceeded the 100-hour ceiling Shamaei had sought to impose.[5] At this point, the job was still not complete. Yet Shamaei allowed Conway to continue work on the project without a single protest, complaint, or

---

[4]We infer from the judgment that the trial court found that a 100-hour cap on Conway's services was not part of the agreement. *See Rosemond*, 331 S.W.3d at 766–67; *Wood,* 331 S.W.3d at 79.

[5]When combined with the January 14 invoice, by February 23 Conway had billed Shamaei for a total of 178 hours of work.

objection as to the number of hours Conway had expended on the project to date.

Moreover, faced with invoices that exceeded 100 hours almost two-fold, Shamaei continued to actively engage Conway in the final push to finalize the plans and obtain City permits necessary for the renovation process. Text communications exchanged between the parties during this critical period of time demonstrate a flurry of activity between Shamaei and Conway related to the project.[6] On February 27, Shamaei specifically directed Conway's work, asking him to respond to an email from a city official and to change the location of the dumpster on the plans in order to finalize the permit process with the City. These communications evidence an ongoing agreement between the parties to work beyond the hours already expended by Conway to get the plans approved and the architectural work done.

On March 4, the permit was approved and Conway had ceased billing for his time. Four days later, Shamaei received the third and final invoice, which added another fifty hours of work for those last days leading up to final City approval. Rather than speak up when faced with invoices that had more than doubled what Shamaei claimed was the agreed-upon limit, the record reflects that Shamaei again remained silent. Not until almost a month later, after he had

---

[6]Included were discussions regarding matters such as reviewing the City of Euless's comments to the architectural plans and identifying the types of chemicals that would be stored on the premises.

used Conway's architectural plans to complete his renovation project and save his building from demolition, did Shamaei, in response to a request for final payment by Conway, first claim he did not believe the invoiced time was reasonable.

Given the conduct and course of dealings between the parties as reflected in the record, the trial court could have found that Shamaei accepted Conway's ongoing work as reasonable and necessary to complete the job. Because the record reveals more than a scintilla of evidence to support the finding that the hours as billed by Conway in performing the contract were reasonable, we hold that the evidence is legally sufficient to support the judgment. *See Tex. Delta Upsilon Found. v. Fehr*, 307 S.W.2d 124, 131–32 (Tex. Civ. App.—Austin 1957, writ ref'd n.r.e.) (holding evidence sufficient to support jury finding on reasonable value of architects' services under contract that had no cost limitation but only an estimated cost approximation and finding a duty on the part of the client to inform the architects that their services were no longer desired when cost became a factor; otherwise, a duty on the part of the architect to continue to work).

We overrule Shamaei's sole issue.

## IV. Conclusion

Having overruled Shamaei's sole issue, we affirm the trial court's judgment.

/s/ Bonnie Sudderth
BONNIE SUDDERTH
JUSTICE

8

PANEL:  LIVINGSTON, C.J.; DAUPHINOT and SUDDERTH, JJ.

DELIVERED:  April 30, 2015