

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-18-00072-CV

_____

AMERICAN HOMEOWNER PRESERVATION, LLC AND JORGE NEWBERY,
Appellants

V.

BRIAN J. PIRKLE, Appellee

On Appeal from the 236th District Court
Tarrant County, Texas
Trial Court No. 236-293606-17

Before Sudderth, C.J.; Meier and Kerr, JJ.
Memorandum Opinion by Chief Justice Sudderth

## MEMORANDUM OPINION

## I. Introduction

In *American Homeowner Preservation Fund, LP v. Pirkle* (*Pirkle I*), 475 S.W.3d 507, 510–11 (Tex. App.—Fort Worth 2015, pet. denied), American Homeowner Preservation Fund, LP (AHP Fund) appealed the trial court's judgment, which declared null and void its lien on property that Appellee Brian J. Pirkle had purchased at a tax-foreclosure sale and awarded $35,000 in attorney's fees to Pirkle. We modified the trial court's judgment to delete the trial court's declaration as to a nonparty and otherwise affirmed the judgment as modified. *Id.* at 512, 529–30.

Pirkle subsequently filed a new lawsuit against Appellant American Homeowner Preservation, LLC (AHP-LLC), AHP Fund, and Appellant Jorge Newbery, who Pirkle alleged was the CEO of AHP-LLC and the managing partner of AHP Fund. In his new lawsuit, Pirkle sought to collect the $35,000 attorney's fee award and alleged a violation of the Texas Uniform Fraudulent Transfer Act (TUFTA) with regard to AHP Fund's transfer of six parcels of Tarrant County real property, which Pirkle claimed left AHP Fund insolvent and unable to pay the judgment.[1] *See, e.g., Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 335–36 (Tex. 2009) (holding that, depending on the facts of the case, an out-of-state

---

[1]Pirkle alleged that after the supreme court denied AHP Fund's petition for review, he sent a demand for payment but that AHP Fund did not respond. He further alleged that AHP-LLC and Newbery failed to respond to his post-judgment discovery requests.

company accused of violating TUFTA by acting as the transferee of Texas property interests can be subject to the jurisdiction of Texas courts); *see also* Tex. Bus. & Com. Code Ann. § 24.002(1), (7) (West Supp. 2018) (defining "affiliate" and "insider" under TUFTA).

AHP-LLC and Newbery filed special appearances, which the trial court denied, and then brought this interlocutory appeal. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(7) (West Supp. 2018). We affirm.

## II. Special Appearance

Texas courts may exercise personal jurisdiction over a nonresident if "(1) the Texas long-arm statute authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction is consistent with federal and state constitutional due-process guarantees." *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 149 (Tex. 2013) (quoting *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007)); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 17.042 (West 2015). The plaintiff bears the initial burden of pleading allegations sufficient to permit a court's exercise of personal jurisdiction over the nonresident defendant, and once the plaintiff meets this burden, the defendant then assumes the burden to negate all potential bases for personal jurisdiction that exist in the plaintiff's pleadings. *Searcy v. Parex Res., Inc.*, 496 S.W.3d 58, 66 (Tex. 2016) (citing *Retamco*, 278 S.W.3d at 337). One way the defendant can meet this burden to negate jurisdiction is by showing that "even if the plaintiff's alleged facts are true, the evidence is legally insufficient to establish jurisdiction" or that "the defendant's

3

contacts with Texas fall short of purposeful availment." *Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550, 559 (Tex. 2018) (quoting *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 659 (Tex. 2010)). If the defendant presents evidence that effectively disproves the plaintiff's allegations, the plaintiff may then provide evidence to prove its jurisdictional allegations. *Kelly*, 301 S.W.3d at 659.

## A.  The Clerk's Record

In his original petition, Pirkle alleged that prior to the judgment in the earlier lawsuit, AHP Fund owned or held an interest in six pieces of real property in Tarrant County, Texas, and that Newbery was "an affiliate and insider of both" AHP Fund and AHP-LLC. Pirkle further alleged:

- On July 10, 2013, AHP Fund released, via Newbery, the mortgage against 3124 Huron Trail, Lake Worth, filed on September 13, 2013, in instrument number D213242003.

- On November 26, 2013, AHP Fund, via Newbery, assigned its interest in 2513 Dean Lane, Fort Worth, to Mortgage Electronic Registration Systems, Inc. (MERS), and that the assignment was filed on March 6, 2014, in instrument number D214043951.

- On January 15, 2014, AHP Fund, via Newbery, assigned its interest in 3104 NW 25th Street, Fort Worth, to AHP-LLC and that the assignment was filed on February 7, 2014, in instrument number D214024964.

- On October 30, 2014, AHP Fund, via Newbery, deeded its interest in 3821 Lauretta Drive, Fort Worth (Lot 12, Block 14, Eastwood Addition to the City of Fort Worth), to AHP-LLC, in instrument number D214243017.

- On March 29, 2016, AHP Fund released its interest in the last two pieces of property—1804 Lynnhaven Road and 3416 Panola Avenue—to Asifali Mahomed

in instrument numbers D216068002 and D216068003, resulting in the final disposition of all of AHP Fund's assets and rendering it insolvent.

Pirkle included the same allegations in his response to the special appearances and his amended response.[2] In his amended response, Pirkle added that Newbery knew that the transfers would render AHP Fund insolvent and referenced Newbery's having filed an affidavit in support of AHP Fund's motion for summary judgment in the prior case, arguing that Newbery "actively participated in litigation in the State of Texas while attempting to deprive [Pirkle] of his property" by attesting to his personal knowledge.[3] Pirkle referenced civil practice and remedies code sections 17.042 and 17.003 as bases for jurisdiction under the long-arm statute in his response and amended response. *See* Tex. Civ. Prac. & Rem. Code Ann. § 17.003 (West 2015) (stating that a person who claims an interest in property—including a lien—may sue a nonstate resident who claims an adverse interest to establish title, settle a lien, or determine an estate, interest, lien, or encumbrance), § 17.042(2) (stating that a nonresident does business in Texas if he commits a tort in whole or in part in this state).

---

[2]We note from the record in the earlier appeal that the original lawsuit was filed April 1, 2013, partial summary judgment was granted September 30, 2013, and the final judgment was entered August 14, 2014.

[3]In that affidavit, Newbery averred that he was an officer and duly authorized representative of AHP Fund, that he was responsible for the transactions that were the subject of the lawsuit, and that he was the custodian of AHP Fund's business records.

AHP-LLC filed an unsworn declaration in support of its special appearance. *See id.* § 132.001(a), (c), (d) (West Supp. 2018) (setting out requirements for an unsworn declaration to be used in lieu of a required written sworn declaration, verification, certification, oath, or affidavit). In the unsworn declaration, Newbery stated that he was AHP-LLC's authorized representative and that AHP-LLC had never received an assignment of AHP Fund's interest in the real property located at 3104 NW 25th Street, Fort Worth via the January 15, 2014 assignment recorded in the Tarrant County public records on February 7, 2014, as instrument number D214024964, because that assignment was "made in error and rescinded" on May 16, 2014, and the rescission was filed on May 27, 2014, as instrument number D214107679. Newbery attached a certified original copy of instrument number D214107679 to his unsworn declaration.

Newbery further stated that AHP-LLC did not take and had never held any ownership interest in the property located at 3821 Lauretta Drive, Fort Worth; rather, AHP Fund had transferred its interest in that property to Memphis Invest, GP, on October 30, 2014, which was recorded on November 6, 2014, as instrument number D214243017. Newbery attached a certified original copy of that instrument to his declaration.

Newbery also filed an unsworn declaration in support of his own special appearance, in which he asserted that he was not a Texas resident, did not own any real property or interests in real property in Texas, and had not received any

6

ownership interests in real property in Texas through any type of conveyance from AHP Fund. *See id.* He stated, "At all times in relation to the assignments and other conveyances of real property identified in Plaintiff's Petition as being allegedly fraudulent, I was acting in my official capacity as the managing member of the general partner of American Homeowner Preservation Fund, L.P." He further stated that all of the conveyances by AHP Fund identified by Pirkle as being allegedly fraudulent "were done in the ordinary course of [AHP Fund's] business." He did not otherwise address the release of AHP Fund's mortgage against 3124 Huron Trail, Lake Worth, filed over two weeks before the September 30, 2013 partial summary judgment, in D213242003, or the assignment of AHP Fund's interest in 2513 Dean Lane, Fort Worth, to MERS, filed several months before the final judgment, in D214043951.

In their combined reply to Pirkle's response, AHP-LLC and Newbery argued that their declarations and other evidence conclusively showed that neither of them had ever received any of the fraudulent transfers alleged by Pirkle. They also argued that under TUFTA, only the debtor or the transferee are subject to liability and that Newbery was neither, according to Pirkle's pleadings.

In its order denying the special appearances, the trial court stated that it had considered "the pleadings, the attachments, the affidavits and testimony." The lawyers for both parties approved the order denying the special appearances "as to form."

7

**B. Discussion**

In two issues, AHP-LLC and Newbery argue that a Texas court cannot properly exercise specific personal jurisdiction over them. AHP-LLC complains that its evidence shows that the minimum contacts alleged by Pirkle did not actually occur. Newbery complains that the alleged facts, even when taken as true, fail to show that he directed any tort at a Texas resident or had sufficient minimum contacts. They both argue that Pirkle provided nothing to controvert their evidence and that there is no reporter's record of the trial court's October 27, 2017 hearing.

Pirkle responds that in the absence of a reporter's record or findings of fact and conclusions of law—which AHP-LLC and Newbery did not request—there is nothing for this court to review to determine whether the trial court erred. He contests their assertions that he provided no evidence to controvert their declarations and asserts that at the special appearance hearing, he offered into evidence "real estate records regarding ownership of real estate not only by the original defendant in the underlying lawsuit, [AHP Fund], but also by the defendant [AHP-LLC]," and that in each of the transactions, Newbery's signature appeared as the grantor on behalf of the entity.

Pirkle does not elaborate on whether oral testimony was offered to support these offerings and if so, by whom, or whether the trial court admitted these offerings into evidence. However, he correctly points out that in its unsworn declaration, AHP-LLC did not deny that it did business in Texas or that it committed a tort in

8

Texas; he thereby argues that general jurisdiction could have been tried by consent based on evidence presented at the hearing, notwithstanding that his pleadings were based on specific jurisdiction. Newbery asserted in his declaration that he did not receive any property interests from AHP Fund and that he was not a Texas resident and owned no property interests in Texas, but he likewise did not deny that he had committed a tort in Texas.

In their reply brief, AHP-LLC and Newbery argue that no reporter's record was necessary because the hearing was nonevidentiary and that we should review the trial court's order solely based on their evidence in the clerk's record.

### 1. Standard of Review

In reviewing a trial court's order denying a special appearance, we must review the trial court's factual findings for legal and factual sufficiency but review its legal conclusions de novo because whether a court has personal jurisdiction over a defendant is a question of law. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). When a trial court does not issue findings of fact and conclusions of law with its special appearance ruling, all facts necessary to support the judgment and supported by the evidence are implied. *Id.* at 795. But when the appellate record includes both the reporter's and clerk's records, these implied findings are not conclusive and may be challenged for legal and factual sufficiency. *Id.* Generally, when we do not have a reporter's record, we indulge every presumption in favor of the trial court's judgment. *Wood v. Tex. Dep't of Pub. Safety*, 331 S.W.3d 78,

9

79–80 (Tex. App.—Fort Worth 2010, no pet.). However, when jurisdictional facts are undisputed, it is a question of law as to whether those facts establish jurisdiction; the reviewing court "need not consider any implied findings of fact" and will consider only the legal question of whether the undisputed facts establish Texas jurisdiction. *Old Republic Nat'l Title Ins. Co.*, 549 S.W.3d at 558.

## 2. Application

Findings of fact and conclusions of law were not requested or filed, and the trial court's order states that it considered "the pleadings, the attachments, the affidavits *and testimony*."[4] [Emphasis added.] *See* Tex. R. Civ. P. 120a(3) (stating that the court shall determine the special appearance "on the basis of the pleadings, any stipulations made by and between the parties, such affidavits and attachments as may be filed by the parties, the results of discovery processes, *and any oral testimony*" (emphasis added)); *see also Crawford v. XTO Energy, Inc.*, 509 S.W.3d 906, 910 (Tex. 2017) ("[W]e generally presume that pretrial hearings are nonevidentiary unless 'the proceeding's nature, *the trial court's order*, the party's briefs, or other indications *show that an evidentiary hearing took place in open court*.'" (emphasis added) (quoting *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 783 (Tex. 2005)).

---

[4]We are unpersuaded by AHP-LLC and Newbery's argument that the trial court's order shows that it did not rely on any evidence introduced at the hearing and their unsupported assertion that there was no witness testimony at the special appearance hearing.

10

The face of the order supports Pirkle's assertion on appeal that there was evidence before the trial court that we do not have in the record and that there were disputed fact issues. *See Crawford*, 509 S.W.3d at 910; *cf. Old Republic Nat'l Title Ins. Co.*, 549 S.W.3d at 558 (stating that undisputed jurisdictional facts allow the court to consider only the legal question of whether those undisputed facts establish Texas jurisdiction).

Accordingly, under our standard of review, because the trial court's order reflects that testimony was taken and considered, because no fact findings were requested or filed, and because we have no reporter's record to review, we must indulge every presumption in favor of the trial court's order. *See BMC Software Belgium, N.V.*, 83 S.W.3d at 794–95; *see also Retamco*, 278 S.W.3d at 337 ("When, as here, the trial court does not make findings of fact and conclusions of law in support of its ruling, 'all facts necessary to support the judgment and supported by the evidence are implied.'" (quoting *BMC Software Belgium, N.V.*, 83 S.W.3d at 795)).[5] We have no

---

[5]In *Retamco*, the plaintiff pleaded that the defendant was subject to personal jurisdiction as the fraudulent transferee of Texas real property, and the defendant did not dispute that the property at issue was located in Texas or that it was the recipient of a transfer of that property. 278 S.W.3d at 337. The court held that the purposeful taking of assignments of Texas real property, even when the assignments were received out-of-state, resulted in the defendant's having "reached out and created a continuing relationship in Texas" because under the property assignment, it was liable for continuing obligations and expenses related to the property interests, such as valuation and tax issues. *Id.* at 339. The ownership of the property interests also allowed the defendant to enjoy the benefits and protection of Texas laws, such as the right to enforce warranties and covenants related to the real property. *Id.* at 339–40 ("Unlike personal property, Republic's real property will always be in Texas, which

11

record of what Pirkle presented to the trial court that may have controverted AHP-LLC and Newbery's evidence in the clerk's record. Because AHP-LLC and Newbery opted neither to request that the hearing be recorded nor that the trial court make findings of fact and conclusions of law, we do not know what testimony supported the trial court's denial of the special appearances, only that—per the face of the order, the form of which was approved by both parties—there was some. We overrule AHP-LLC and Newbery's two issues. *See Bank of Am., N.A. v. Lerma*, No. 02-18-00055-CV, 2018 WL 4183082, at *3 (Tex. App.—Fort Worth Aug. 31, 2018, no pet. h.) (mem. op.) (overruling two of appellant's issues as moot when the record not only failed to support its argument but unambiguously reflected the contrary).

## III. Conclusion

Having overruled both of AHP-LLC and Newbery's issues, we affirm the trial court's order and remand this case to the trial court for further proceedings.

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Delivered: October 18, 2018

---

leaves no doubt of the continuing relationship that this ownership creates."). Additionally, proof that the real property assets were transferred and an assessment of their value are essential to liability arising from or related to the forum contacts for a TUFTA claim, and Texas has an interest in resolving controversies involving real property within its borders. *Id.* at 341–42; *cf. Old Republic Nat'l Title Ins. Co.*, 549 S.W.3d at 556 (holding no personal jurisdiction over TUFTA claim involving Louisiana resident who received a series of money transfers from a Texas resident in connection with the sale of Texas property).