

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-18-00178-CV

———————————————

ENERQUEST OIL & GAS, L.L.C., Appellant

V.

ANTERO RESOURCES CORPORATION, Appellee

---

On Appeal from the 141st District Court
Tarrant County, Texas
Trial Court No. 141-290089-17

---

Before Sudderth, C.J.; Gabriel and Birdwell, JJ.
Memorandum Opinion on Rehearing by Chief Justice Sudderth

**MEMORANDUM OPINION ON REHEARING**

Appellee Antero Resources Corporation filed a motion for rehearing and a motion for rehearing en banc of our January 31, 2019 memorandum opinion. The court's prior memorandum opinion and judgment are withdrawn, and this memorandum opinion and judgment are substituted. Thus, the motions for rehearing and for rehearing en banc are denied as moot.

## I. Introduction

Antero intervened in a lawsuit and brought a trade secret misappropriation claim against Appellant EnerQuest Oil & Gas, L.L.C. EnerQuest filed a special appearance challenging the trial court's personal jurisdiction. After the trial court overruled EnerQuest's special appearance, EnerQuest filed this accelerated, interlocutory appeal. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(7). We reverse and render.

## II. Background

### A. The Parties

Antero is a corporation headquartered in Colorado and is engaged in the business of oil and gas exploration and production in West Virginia. EnerQuest is a limited liability company, organized under the laws of Oklahoma. EnerQuest is also in the oil and gas exploration and production business, operating oil and gas wells in Oklahoma, Texas, Louisiana, Utah, and Arkansas, and owning nonoperating oil and gas interests in numerous other states. Although it is registered and conducts some

business in Texas, EnerQuest maintains no offices or employees in Texas and is headquartered in Oklahoma.

In November 2015, EnerQuest entered into a "Limited Liability Company Agreement" (Formation Agreement) with Braxton Minerals-Appalachia, LLC (BMA)[1] to form Braxton Minerals III, LLC (BMIII)—a limited liability company organized under and to be governed by the laws of Delaware with its principal place of business in Texas—in order to "acquire, own, hold, and maintain Oil and Gas Interests in the Buy Area . . . ." The Formation Agreement defines "Buy Area" as "the States of West Virginia, Pennsylvania, and Ohio." The Formation Agreement, which was signed by EnerQuest's president Gregory Olson and by BMA's president at the time Brad Ashburn,[2] provided that EnerQuest and BMA would be the sole members of BMIII with EnerQuest providing up to $10 million in investment capital and owning a 75% interest and BMA owning a 25% interest. The parties also agreed that BMA would be BMIII's manager and that any action or proceeding relating to the Formation Agreement "shall be exclusively brought in any state or federal court located in Oklahoma City, Oklahoma and . . . waive[d] any objection . . . to the laying of venue

---

[1]BMA is a limited liability company organized under the laws of Texas.

[2]BMA, along with Braxton Energy, LLC; Braxton Acquisitions, LLC; and Braxton Minerals II, LLC (BMII), is allegedly owned and controlled by Scott Bauer. Ashburn was formerly affiliated with Bauer's various companies.

3

of any action or proceeding arising out of or in connection with this Agreement brought in such courts . . . ."

For convenience and clarity, we have diagrammed the relationship between these entities:



## B. The Dispute and Lawsuit

Penn Investment Funds, LLC filed a lawsuit in the 141st District Court in Tarrant County against seven defendants, including Braxton Energy, LLC; Braxton Acquisitions, LLC; BMII; Bauer; and Ashburn, alleging fraud and other causes of

4

action and seeking disgorgement of approximately $225,000 in illegal profits.[3] Antero, believing that profits sought by Penn Investment had been generated in connection with the misappropriation of Antero's trade secrets, intervened and added, inter alia, EnerQuest as a party. Antero sought injunctive relief and damages based on trade secret misappropriation, conspiracy, and aiding and abetting from various parties in the lawsuit. The only claim Antero's "amended petition in intervention" asserts against EnerQuest is trade secret misappropriation.[4]

At the crux of its lawsuit, Antero alleges that Bauer and Ashburn participated in an unlawful scheme to obtain Antero's confidential documents[5] and trade secrets

---

[3]According to Penn Investment, Braxton Energy, LLC violated the terms of a $1.6 million loan and used approximately $225,000 of the funds for profit disbursements rather than applying 100% of the loan to the acquisition of West Virginia mineral interests as required by the terms of the loan.

[4]In its brief, Antero vaguely asserts that it has amended its pleading to "clarify its conspiracy allegations." However, the amended petition in intervention is Antero's only pleading in the clerk's record before us and it does not allege a conspiracy claim against EnerQuest. *See Atchison v. Weingarten Realty Mgmt. Co.*, 916 S.W.2d 74, 76 (Tex. App.—Houston [1st Dist.] 1996, no writ) ("The general rule is that the court cannot consider an item that is not part of the record on appeal."); *cf. Favour Leasing, LLC v. Mulligan*, No. 05-13-01000-CV, 2014 WL 4090130, at *9 (Tex. App.—Dallas Aug. 19, 2014, no pet.) (mem. op. on reh'g) (stating that when there is no testimony at the hearing, courts decide whether the trial court erred in denying the special appearance "from a review of the clerk's record alone").

[5]The three documents at issue are (1) a "Critical Date Report," (2) a "SWN June 2016 Acquisition Defects report," and (3) certain title opinions reflecting legal rights and ownership in surface estates and mineral interests in land located in West Virginia. The Critical Date Report reflects Antero's dates of drilling and dates for first gas and oil sales from the wells. The SWN June 2016 Acquisition Defects report reflects due diligence conducted by Antero in its acquisition of certain West Virginia

concerning Antero's oil-and-gas business opportunities in West Virginia. According to Antero's allegations, Bauer and Ashburn then disclosed the confidential information to additional parties, including EnerQuest.

Antero contends that EnerQuest both actively participated in and passively benefited from the misappropriation of the trade secrets. First, Antero alleges that EnerQuest, through an e-mail from its president Gregory Olson, "reached out" to Bauer in order to acquire and thereby misappropriate Antero's trade secrets. Second, Antero alleges that the trade secrets were utilized by BMII to purchase assets, adverse to Antero, which were then sold to BMIII and funded by EnerQuest as contemplated by the Formation Agreement. So when EnerQuest later removed BMA and appointed itself as manager of BMIII, EnerQuest, by virtue of its ownership and management of BMIII, improperly benefited from the misappropriation of Antero's trade secrets.

EnerQuest admits that it did receive the alleged trade secrets in February 2017 "in Oklahoma" but denies wrongdoing or unlawful activity as alleged by Antero. Rather, EnerQuest disavows any knowledge that Bauer, the individual who approached EnerQuest with an opportunity to invest new capital in a mineral acquisition program in West Virginia, had obtained any trade secrets. According to

leases. And the title opinions reflect Antero's counsel's position concerning the ownership of minerals and the rights to develop such minerals for land located in West Virginia.

6

EnerQuest, it did not learn about the misappropriation accusations until February 2018, at which point EnerQuest turned over the alleged trade secrets to Antero. According to Olson, EnerQuest neither discussed the information with anyone outside of EnerQuest (other than Bauer and Ashburn), nor disclosed the information to anyone outside of EnerQuest.

## C. The Special Appearance Proceedings

EnerQuest filed a special appearance, *see* Tex. R. Civ. P. 120a, contending that the trial court had neither general nor specific personal jurisdiction over it. In its special appearance, EnerQuest argued that the trial court had no general jurisdiction over it because EnerQuest was organized under the laws of Oklahoma and maintained its principal place of business in Oklahoma. EnerQuest argued that there was no specific jurisdiction over it because none of the actions alleged by Antero arose from any activity by EnerQuest that was intentionally or purposefully directed at the State of Texas. EnerQuest further argued that any damages sustained by Antero from such disclosure or use would be realized in West Virginia, where the subject properties were located, or in Colorado, where Antero's corporate headquarters were located, and not in Texas. EnerQuest supported its special appearance by attaching, among other documents, an affidavit from Olson and the Formation Agreement.

As part of its response to EnerQuest's special appearance, Antero sought a continuance to conduct discovery limited to the issue of personal jurisdiction. Antero also argued that the special appearance should be denied because EnerQuest had a

75% ownership interest in BMIII, a Texas entity run by Texans Bauer and Ashburn, and because BMIII had its principal place of business in Texas. According to Antero, Bauer and Ashburn improperly acquired Antero's trade secrets and provided them to EnerQuest at EnerQuest's request. Antero also argued that when, at EnerQuest's request, Bauer and Ashburn improperly provided the alleged trade secrets to EnerQuest, EnerQuest received that information from Texas and sent money to Texas for investment. Antero further asserted that EnerQuest—via an e-mail from Olson to Bauer—had "reached out" to Bauer who was allegedly in Texas in order to obtain and thereby misappropriate Antero's trade secrets. However, Antero did not raise general jurisdiction as a basis for jurisdiction over EnerQuest but instead argued only for specific jurisdiction over EnerQuest.

The trial court did not rule on Antero's motion for continuance to conduct discovery,[6] and after a hearing, it overruled the special appearance. This interlocutory appeal followed.

---

[6]Antero conditionally argues that we should remand without rendering judgment dismissing EnerQuest in order to permit the trial court to consider whether more jurisdictional discovery is warranted. But Antero does not direct us to anywhere in the record to show that the motion for continuance was ruled on nor have we located "a clearly implied ruling by the trial court." *Seim v. Allstate Texas Lloyds*, 551 S.W.3d 161, 166 (Tex. 2018); *see Epicous Adventure Travel, LLC v. Tateossian, Inc.*, No. 08-18-00057-CV, 2019 WL 926278, at *10 (Tex. App.—El Paso Feb. 26, 2019, no pet. h.) (relying on *Seim* in overruling challenge to trial court's failure to permit jurisdictional discovery in special appearance proceeding in part because the party seeking such discovery never "obtained a ruling on its request for additional discovery" and "[o]btaining a ruling, or at least a refusal to rule (supported by an objection to the refusal to rule) is an elemental requirement for preservation of

8

## III. Discussion

EnerQuest argues that the trial court erred by denying its special appearance (1) because Antero failed to meet its initial burden of pleading allegations sufficient to permit the trial court to exercise personal jurisdiction—general or specific—over it; (2) because there is no legally or factually sufficient evidence that EnerQuest is "essentially at home" in Texas that would allow the exercise of general jurisdiction over it; and (3) because there is no legally or factually sufficient evidence to support the exercise of specific jurisdiction over it under a contract or tort theory. Although EnerQuest presents and briefs these as three separate issues, our primary focus is on whether the trial court has specific jurisdiction over EnerQuest.[7] *See* Tex. R. App. P. 47.1.

___

error"). Accordingly, any error in the failure to permit jurisdictional discovery has not been preserved for our review. *See* Tex. R. App. P. 33.1(a)(2); *Mitchell v. Bank of Am., N.A.*, 156 S.W.3d 622, 626 (Tex. App.—Dallas 2004, pet. denied) ("[Plaintiffs] failed to obtain a ruling from the trial court on the motion for continuance and therefore, failed to preserve error.").

[7]We focus our discussion in this regard because Antero did not expressly allege in its pleadings, special-appearance response, oral argument at the special appearance hearing, or appellate briefing that Texas courts have general jurisdiction over EnerQuest. And, in any event, the record before us does not meet the "high bar" required for general jurisdiction, *Searcy v. Parex Res., Inc.*, 496 S.W.3d 58, 72 (Tex. 2016), as EnerQuest is not incorporated in Texas, does not have a principal place of business in Texas, and does not maintain any offices in any state other than Oklahoma. *See Daimler AG v. Bauman,* 571 U.S. 117, 127, 134 S. Ct. 746, 754 (2014) (holding courts may have general jurisdiction over a defendant only if the defendant's "affiliations with the [s]tate are so continuous and systematic as to render them essentially at home in the forum [s]tate." (citing *Goodyear Dunlop Tires Operations, S.A. v.*

9

## A. Personal Jurisdiction Law

Texas courts may exercise personal jurisdiction over a nonresident if "(1) the Texas long-arm statute authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction is consistent with federal and state constitutional due-process guarantees." *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 149 (Tex. 2013) (quoting *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007)); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 17.042(1), (2) (providing that "a nonresident does business in this state if the nonresident: (1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state; (2) commits a tort in whole or in part in this state"). The requirements of the Texas long-arm statute are considered satisfied if the exercise of personal jurisdiction comports with federal due process. *Twister B.V. v. Newton Research Partners, LP*, 364 S.W.3d 428, 434 (Tex. App.—Dallas 2012, no pet.).

Personal jurisdiction over a nonresident defendant is consistent with due process guarantees when the defendant has established minimum contacts with the forum state, and the exercise of jurisdiction comports with "traditional notions of fair play and substantial justice." *Moki Mac*, 221 S.W.3d at 575 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158 (1945)). Minimum contacts are established when the nonresident defendant "purposefully avails itself of the privilege

*Brown*, 564 U.S. 915, 919, 131 S. Ct. 2846, 2851 (2011))). Accordingly, we need not reach EnerQuest's second issue regarding general jurisdiction.

of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1240 (1958); *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 784 (Tex. 2005). The defendant's conduct and connection with the state must be such that it could reasonably anticipate being sued in the forum. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–75, 105 S. Ct. 2174, 2183–84 (1985); *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002) ("The defendant's activities, whether they consist of direct acts within Texas or conduct outside Texas, must justify a conclusion that the defendant could reasonably anticipate being called into a Texas court.").

A defendant's contacts with a forum can give rise to either general or specific jurisdiction, *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795–96 (Tex. 2002), and specific jurisdiction is established if the defendant's alleged liability arises from or relates to the defendant's activity conducted within the forum. *See Spir Star AG v. Kimich*, 310 S.W.3d 868, 873 (Tex. 2010). A court may exercise specific jurisdiction over a nonresident defendant when two requirements are met: (1) the defendant's contacts with the forum state are purposeful, and (2) the cause of action arises from or relates to those contacts. *Id.*; *Moki Mac*, 221 S.W.3d at 576.

Even if minimum contacts are present, a trial court may not exercise personal jurisdiction over a nonresident defendant if it would offend traditional notions of fair play and substantial justice. *Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal., Solano Cty.*, 480 U.S. 102, 113, 107 S. Ct. 1026, 1033 (1987). "Only in rare cases, however,

will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the forum state." *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 231 (Tex. 1991).

## B.  Special Appearance Burdens of Proof

Procedurally, the parties in a special appearance challenging personal jurisdiction bear shifting burdens of proof. *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010).  The plaintiff bears the initial burden of pleading jurisdictional facts sufficient to bring a nonresident defendant within the provisions of the Texas long-arm statute. *Id.* If the nonresident defendant challenges jurisdiction through a special appearance, it then bears the burden of negating all bases of personal jurisdiction alleged by the plaintiff. *Id.*; *Moki Mac*, 221 S.W.3d at 574.  The nonresident defendant "can negate jurisdiction on either a factual or legal basis." *Kelly*, 301 S.W.3d at 659.  Specific jurisdiction can be negated on a legal basis if the defendant can establish that even taking the plaintiff's alleged facts as true, (1) "the evidence is legally insufficient to establish jurisdiction"; (2) "the defendant's contacts with Texas fall short of purposeful availment"; (3) "the claims do not arise from the contacts"; or (4) "traditional notions of fair play and substantial justice are offended by the exercise of jurisdiction." *Id.*

12

## C. Standard of Review

When reviewing a trial court's order denying a special appearance, we must review the trial court's factual findings for legal and factual sufficiency but review its legal conclusions de novo because whether a court has personal jurisdiction over a defendant is a question of law. *BMC Software*, 83 S.W.3d at 794. When a trial court does not issue findings of fact and conclusions of law with its special appearance ruling, all facts necessary to support the judgment and supported by the evidence are implied. *Id.* at 795. But when the appellate record includes both the reporter's and clerk's records, these implied findings are not conclusive and may be challenged for legal and factual sufficiency. *Id.* When jurisdictional facts are undisputed, it is a question of law as to whether those facts establish jurisdiction; the reviewing court "need not consider any implied findings of fact" and will consider only the legal question of whether the undisputed facts establish Texas jurisdiction. *Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550, 558 (Tex. 2018).

## D. Jurisdictional Facts

Antero presents the following factual allegations in support of the trial court's exercise of personal jurisdiction over EnerQuest:

- EnerQuest is registered to do business in Texas and does business in Texas;

- EnerQuest entered into a contract—the Formation Agreement—with a Texas company—BMA—to be performed in Texas;

- EnerQuest's Formation Agreement with BMA was the "pathway" by which EnerQuest received and benefitted from Antero's alleged trade secrets;

- Based on the Formation Agreement, EnerQuest intended to acquire, and funded the acquisition of, confidential information from Texas over a period of years;

- EnerQuest "reached out" to Texas to acquire and thereby misappropriate confidential information.

## E. Application of the Law to the Facts

### 1. No Jurisdiction Over EnerQuest Simply Because it is Registered to Do Business and Conducts Some Business in Texas

Antero alleges personal jurisdiction over EnerQuest because EnerQuest is registered to do business in Texas and conducts some business in Texas. In its opening brief, EnerQuest acknowledged that it is registered to do business in Texas and conducts business here.

Notwithstanding that this argument goes to a general jurisdiction theory—a theory not advanced by Antero—rather than a specific jurisdiction theory of personal jurisdiction, *see Waterman Steamship Corp. v. Ruiz*, 355 S.W.3d 387, 418 (Tex. App.—Houston [1st Dist.] 2011, pet. denied) (recognizing that courts "consider registering to do business in Texas and maintaining a registered agent in Texas in undertaking a minimum contacts analysis" to resolve whether Texas courts can "constitutionally exercise general jurisdiction"), the undisputed facts that EnerQuest is registered to do business in Texas and conducts some business in Texas are not on their own enough to establish personal jurisdiction when they have no connection to Antero's causes of

14

action. *See id.* (stating that "[a]lthough we consider registering to do business in Texas and maintaining a registered agent in Texas in undertaking a minimum contacts analysis," such factors "are not dispositive"); *Spir Star AG*, 310 S.W.3d at 873; *Moki Mac*, 221 S.W.3d at 576.

Accordingly, we cannot rely on Antero's first jurisdictional fact alone as support for the trial court's order overruling EnerQuest's special appearance.

## 2. No Jurisdiction Arising from Contracting with Texas Residents

Antero asserts that if EnerQuest received or benefited from the alleged trade secrets, "it will have done so through the [Formation Agreement] contract obligating two Texas residents to provide EnerQuest with title reports and information about properties for EnerQuest to evaluate." The gravamen of this argument is that by contracting with BMA, a Texas limited liability company, to form BMIII—with Bauer and Ashburn as Texas residents who would be conducting BMIII's business in Texas and designating Texas as BMIII's principal place of business—EnerQuest, as a part owner of BMIII, is subject to personal jurisdiction in Texas.

Texas's long-arm statute provides, "[A] nonresident does business in this state if the nonresident: contracts by mail or otherwise with a Texas resident *and either party is to perform the contract in whole or in part in this state*." Tex. Civ. Prac. & Rem. Code Ann. § 17.042(1) (emphasis added). EnerQuest has entered into a contract—the Formation Agreement—with BMA, a Texas resident, so Antero has demonstrated the first part of subsection one—that EnerQuest has contracted with a Texas resident.

15

However, "[m]erely contracting with a Texas resident does not satisfy the minimum contacts requirement," *Blair Commc'ns, Inc. v. SES Survey Equip. Servs, Inc.*, 80 S.W.3d 723, 729 (Tex. App.—Houston [1st Dist.] 2002, no pet.), nor does the mere fact that BMA may have incidentally performed its part of the contract in Texas. *See Max Protetch, Inc. v. Herrin*, 340 S.W.3d 878, 886 (Tex. 2011) (stating that mere communications made during performance of the contract generally are "insufficient to subject a nonresident to the forum's jurisdiction"); *Peredo v. M. Holland Co.*, 310 S.W.3d 468, 474–75 (Tex. App.—Houston [14th Dist.] 2010, no pet.) ("[A] nonresident does not establish minimum contacts simply by contracting with a Texas entity and engaging in numerous communications, by telephone or otherwise, with people in Texas concerning the contract."). The question is whether, based on "[p]rior negotiations, contemplated future consequences, the terms of the contract, and the parties' actual course of dealing," EnerQuest purposefully established minimum contacts within Texas. *TeleVentures, Inc. v. Int'l Game Tech.*, 12 S.W.3d 900, 909 (Tex. App.—Austin 2000, pet. denied).

Although BMA may have been working in Texas, the Formation Agreement is subject to Delaware law, contains an Oklahoma forum selection clause, and created a Delaware company for the express purpose of developing oil and gas business in West Virginia, Pennsylvania, and Ohio. The facts in this case are similar to those in *Searcy*, in which the supreme court found no specific jurisdiction when the nonresident appeared to have "purposefully avoided" Texas through New York

16

forum selection and choice of law clauses in the contract. 496 S.W.3d at 75 (noting that "insertion of a clause designating a foreign forum suggests that no local availment was intended") (quoting *Michiana Easy Livin' Country*, 168 S.W.3d at 792). Here, the Formation Agreement likewise supports that EnerQuest "purposefully avoided" Texas because the agreement contains an Oklahoma forum selection clause and a Delaware choice of law clause.

To the extent that Antero argues that BMA's serving as BMIII's manager and maintaining a principal place of business in Texas establishes jurisdiction, such a fact is not proper in our analysis of whether specific jurisdiction exists over EnerQuest because it focuses on BMA's and BMIII's (and their principals') relationships to Texas, not EnerQuest's. *See Burger King*, 471 U.S. at 475, 105 S. Ct. at 2184 (explaining the unilateral activity of another party or a third person cannot amount to purposeful availment by the specially appearing defendant); *M&F Worldwide Corp. v. Pepsi-Cola Metro. Bottling Co., Inc.*, 512 S.W.3d 878, 889 (Tex. 2017) (finding no specific jurisdiction when no evidence suggested that the specially appearing, nonresident defendants had any role or authority in selecting location where management company or manager would perform under the settlement agreement contract and nothing in the agreement required performance in Texas). But even if we could consider BMA's and BMIII's contacts, the fact that BMA may have worked from Texas appears entirely incidental to the Formation Agreement, which did not mandate a location from where BMIII would be managed. *See Magnolia Gas Co. v. Knight Equip.*

17

*& Mfg. Corp.*, 994 S.W.2d 684, 692 (Tex. App.—San Antonio 1998, no pet.) (holding no minimum contacts to support personal jurisdiction when "Texas contacts were entirely incidental and immaterial to the purpose of the contract"), *abrogated on other grounds by BMC Software Belgium, N.V.*, 83 S.W.3d at 794 n.1. Thus, we decline to find specific jurisdiction over EnerQuest because BMA happened to office in Texas, especially in light of the express contractual agreement that disputes would be governed by Delaware laws and litigated in Oklahoma and that the contract was entered into for purposes of oil and gas development in Ohio, Pennsylvania, and West Virginia, not Texas.[8]

Therefore, the mere entering into the Formation Agreement is insufficient to establish specific personal jurisdiction over EnerQuest.

### 3. No Specific Jurisdiction for Allegedly Soliciting, Funding, and Acquiring Trade Secrets from Texas Residents

Antero alleges that Texas has personal jurisdiction over EnerQuest because EnerQuest committed a tort in Texas when it "reached out to Texas" to solicit, fund,

---

[8]Antero also characterizes the Formation Agreement as a "pathway" for EnerQuest to obtain Antero's trade secrets that BMII already possessed. That is, BMII had already improperly obtained Antero's trade secrets, and the Formation Agreement even refers to "title reports" that would be provided to EnerQuest as part of the agreement to form BMIII. Again, however, such an allegation focuses on BMII's rather than EnerQuest's Texas contacts, which is improper for resolving EnerQuest's special appearance. *See Walden v. Fiore*, 571 U.S. 277, 291, 134 S. Ct. 1115, 1126 (2014) ("The proper focus of the minimum contacts inquiry in intentional-tort cases is the relationship among the defendant, the forum, and the litigation."); *see also Burger King*, 471 U.S. at 475, 105 S. Ct. at 2184; *M&F Worldwide*, 512 S.W.3d at 889.

and acquire alleged trade secrets that were sent from Texas.  *See* Tex. Civ. Prac. & Rem. Code Ann. § 134A.002(3)(A).  Antero points to an e-mail from Olson to Bauer in which Olson requested that Bauer send him certain drill schedules and Bauer's response in which he stated that he did not have a digital copy of the schedules because he kept them "on my person at all times, bc [*sic*] its [*sic*] one of my prize [*sic*] possessions."  EnerQuest responds that:  (1) the e-mail did not constitute a tort; (2) any tort in the e-mail was not committed by EnerQuest; and (3) even if the e-mail constituted a tort committed by EnerQuest, the tort was committed in Oklahoma and there is no evidence to support that the e-mail was even received in Texas.

Under the Texas Uniform Trade Secrets Act, misappropriation of a trade secret may occur by the "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means."  *Id.*

As an initial matter, it is unclear how the e-mail from Olson "reaching out" and requesting that Bauer send him the alleged trade secrets and the e-mail response from Bauer support the notion that the tort of misappropriation of trade secrets by acquisition was *committed in Texas.  See* Tex. Civ. Prac. & Rem. Code Ann. § 17.042(2). There is nothing in our record to show that Olson sent an e-mail "to Texas" or that Olson received the e-mail and acquired the alleged trade secrets in Texas.  Indeed, Olson stated in his affidavit that he received Bauer's e-mail in Oklahoma.  *See Moncrief Oil Intern.*, 332 S.W.3d at 153 (concluding personal jurisdiction existed over trade

19

secret misappropriation claim when out-of-state defendants "agreed to attend Texas meetings . . . [a]nd . . . accepted Moncrief's alleged trade secrets at those meetings").

Moreover, we question the very premise of the contention that an e-mail can be sent to a particular state. E-mails are not sent to a designated computer or electronic device located at a particular place. E-mail accounts have no physical address. They are sent into cyberspace, saved onto a server (or multiple servers), and retrieved by the recipient wherever that person may happen to be at the given time, whether in Texas, Tennessee, or Tibet. Arguably, to purposely direct an e-mail to a particular state, a sender would be required to know, at the very least, where the recipient's server is located or where the recipient will be when he or she opens the e-mail. The record here reveals no facts upon which we could conclude that any email was "sent to Texas," if indeed it would be theoretically possible to do so.

The tort cases cited by Antero to support personal jurisdiction are factually distinguishable. For example, *Nawracaj v. Genesys Software Sys., Inc.*, 524 S.W.3d 746, 756 (Tex. App.—Houston [14th Dist.] 2017, no pet.), is a legal malpractice case in which the court determined that personal jurisdiction existed over an out-of-state attorney who, while not having stepped foot in a Texas courtroom, nevertheless had been admitted to the Texas federal district court, conceded that he was subject to the State Bar of Texas's authority to discipline him, negotiated a contract with local counsel and supervised their work, and performed the majority of the legal work on the Texas case. *Schexnayder v. Daniels*, 187 S.W.3d 238, 246 (Tex. App.—Texarkana

2006, pet. dism'd w.o.j.), is a medical malpractice case in which the court concluded personal jurisdiction existed over an out-of-state doctor when he "was actively practicing medicine in Texas by directing the actions of his hospital's team while it was in Texas." And, *Luxury Travel Source v. Am. Airlines, Inc.*, 276 S.W.3d 154, 164 (Tex. App.—Fort Worth 2008, no pet.), is primarily a tortious interference case in which our court held that the out-of-state defendant was subject to personal jurisdiction because it had "deliberately induced its Texas customers to undertake further activity in Texas, directed at a Texas business, in direct contravention of an agreement between those residents and the Texas business."

These kinds of facts are not present here. This is not a legal malpractice, medical malpractice, or tortious interference case. EnerQuest exercised no such control over BMA, had no related Texas customers, and did not tortiously interfere with a Texas business's contract.[9] *See Moki Mac*, 221 S.W.3d at 588 (holding no specific jurisdiction in wrongful-death case when Texas resident died on a hiking trail in Arizona because "the relationship between the operative facts of the litigation and [the nonresident defendant's] promotional activities in Texas [is] simply too attenuated to satisfy specific jurisdiction's due-process concerns").

---

[9]In its motions for rehearing, Antero complains that we fail to address Texhoma, a Texas company from which Antero's alleged trade secrets were allegedly stolen. Again, the contacts of a third party such as Texhoma are not germane to resolve EnerQuest's special appearance. *See Walden*, 571 U.S. at 291, 134 S. Ct. at 1126 (explaining that "it is the defendant, not . . . third parties, who must create contacts with the forum State").

21

And although the physical location of the out-of-state defendant is not "dispositive" to negate personal jurisdiction, *Nawracaj*, 524 S.W.3d at 755, we cannot agree with Antero that the e-mail exchange constituted "reaching into Texas" to acquire trade secrets and to purposefully avail itself of the benefits and protections of Texas law. *See Moncrief Oil Intern.*, 332 S.W.3d at 158 (concluding that personal jurisdiction existed over a trade secret misappropriation claim when nonresident defendants had attended two meetings in Texas with a Texas corporation, at which the nonresident defendants accepted alleged trade secrets which had been created in Texas).

Therefore, we hold that EnerQuest's contacts lack the substantial connection to Texas and are too attenuated to the disputed acts allegedly committed in Texas to establish personal jurisdiction over EnerQuest. *See Am. Type Culture Collection*, 83 S.W.3d at 806 ("A defendant is not subject to jurisdiction here if its Texas contacts are . . . attenuated."); *RSM Prod. Corp. v. Glob. Petroleum Group, Ltd.*, 507 S.W.3d 383, 394 (Tex. App.—Houston [1st Dist.] 2016, pet. denied) (holding no personal jurisdiction over nonresident entity because to the extent it may have misappropriated trade secrets by, *inter alia*, sending e-mails to Texas related to the trade secrets, "there are no pleadings or evidence demonstrating that this act occurred, even in part, in Texas").

Accordingly, we sustain EnerQuest's third issue.

## IV. Conclusion

Having concluded that EnerQuest lacked sufficient minimum contacts with Texas to support the trial court's exercise of personal jurisdiction over it, we reverse the trial court's order overruling EnerQuest's special appearance and render judgment dismissing EnerQuest for lack of personal jurisdiction.

/s/ Bonnie Sudderth
Bonnie Sudderth
Chief Justice

Delivered:  April 11, 2019